## Murray *et al. versus* Keyes *et ux.*

In an action against husband and wife, brought with a view of charging the wife's separate estate, the plaintiff must set forth in his pleadings such facts as bring the case within some one of the exceptions contained in the Act of 11th April 1848.

Where the declaration contains no averment respecting the origin of the debt, the plea of coverture is a good defence for the wife; and if the plaintiff wish to avoid its effect, he must set forth·in a replication the special circumstances which make the wife liable, notwithstanding her coverture; or amend his declaration so as to set forth these circumstances.

A joint action cannot be supported against husband and wife, under the 8th section of the Act of 11th April 1848, unless the debt were contracted *by the wife;* the word "or" in the proviso to that section is to be read "and." The plaintiff in such action must aver and prove not only that the debt was incurred for necessaries for the support and maintenance of the wife's family, but that it was contracted by herself, or in her name by her authority.

This reading of the 8th section of the Act of 1848, does not exclude the case where a married woman contracts debts, not for necessaries, but to improve her separate estate; for this class of cases is provided for in the 6th section of the act.

Where a joint action is brought against husband and wife, with a view of charging the wife's separate estate, she is the substantial party defendant, and may appeal from an award of arbitrators, without her husband joining in the appeal.

After such appeal by the wife, the action proceeds properly against her, impleaded with her husband, and the jury should be so sworn, and the verdict taken accordingly.

If the wife, who is the sole party defendant in the issue tried, obtains a verdict in her favour, she is entitled to recover her costs from the plaintiff.

Error to the Common Pleas of *Wayne county.*

This was an action of *assumpsit* by Commodore C. Murray and W. S. Corwin, trading as C. C. Murray & Co., against John Keyes and Abigail Keyes, his wife, for goods sold and delivered to the defendants, with which it was sought to charge the wife's separate estate, as necessaries furnished for the support and maintenance of the family.

The goods were sold by the plaintiff to John Keyes in 1854 and 1855, and were charged to him upon their books. The defendants resided on a tract of land owned by Mrs. Keyes; and the articles for which the debt was contracted were necessaries, and used in the family of the defendants. On the 1st July 1855, there was a balance due the plaintiffs of $552.64, for which this suit was brought.

The cause was arbitrated, and there was an award in favour of the plaintiffs, from which Mrs. Keyes alone appealed. When the cause was reached for trial, the plaintiffs' counsel moved to strike off the appeal, which was refused by the court, and the jury were sworn as to both of the defendants.

[Murray *et al.* v. Keyes *et ux.*]

The court below (BARRETT, P. J.) delivered the following charge to the jury :—

"The defendants are husband and wife. This is an action in assumpsit brought by the plaintiffs for the purpose of recovering a judgment against the wife, and of ultimately collecting it from her separate estate.

"John Keyes was a lumberman, and had been engaged in that business, according to the evidence, from 1851, up to and during the time when this debt was contracted. He resided near the store of the plaintiffs, and had been engaged in manufacturing lumber either for them or for C. C. Murray, one of the firm, most of the time. His business, his means of living and his resources for paying, it is fair to presume, were known to them. In July 1855, he settled with the plaintiffs and with C. C. Murray. His whole credits given him by both at that time, according to the evidence of Moses B. Young, were over $4600. Their joint charges against Keyes, he says, amounted to more than $5400. The book now in court and containing defendants' accounts with these plaintiffs, Young says, was present on that day and taken into the calculation. The account claimed for in this suit amounts to $1022.27, with a credit upon it for $469.63, leaving a balance in favour of plaintiffs of $552.64, in July 1855. The account was kept in the name of John Keyes, and all of the articles charged to him alone. They were purchased during the years 1854 and 1855.

"It is admitted, that on the 10th of July 1843, 75 acres of land were conveyed by Elias Coggins and Nancy his wife, to Isaac Doughty in trust for the separate use of Abigail Keyes, the wife of the defendant, and that the title still stands in the same way. The defendants reside upon it. It is further admitted, that the articles claimed for, were purchased by John Keyes, and went to the use of the family, and that his family consisted of himself, wife, and one child. Sometimes he kept a hired girl, and most of the time a hired man.

"The plaintiffs only claim for such items of the book account, as were for the support and maintenance of the family, and intended for the use of the farm on which they resided. John Keyes admits the correctness of the bill as against himself, and makes no resistance to the plaintiffs obtaining judgment against him. The defence is made by the wife, who is made defendant, and who denies that her separate estate is properly chargeable with any portion of it. This depends upon the construction of the Act of Assembly in relation to the separate estates of married women.

"The Act of 1848 must be so construed as to reconcile its several provisions, if possible. I think a fair construction of the language employed will preserve its consistency, and render its

[Murray *et al. v.* Keyes *et ux.*]

provisions adequate for the purposes intended. It enabled a married woman to acquire and hold certain property. When acquired it is not to be liable for the debts of her husband. This is the strength of the law, and very clearly was intended to be. If one feature in it above another claimed the special attention of the law-making power, it was to render her secure in her separate estate against the improvident bargains of the husband. To render it differently, would be to take away its vitality. It is, however, in the power of the wife to encumber it for debts of her own contracting; and, as we shall see, she may perhaps be held liable, under peculiar circumstances, for the payment of debts not strictly of her own contracting. The language of the act is as follows:—
'In all cases where debts may be contracted for necessaries for the support and maintenance of the family of any married woman, it shall be lawful for the creditor in such case to institute suit against the husband and wife. He is to first have execution against the husband's estate or property, and on failure to make the money, may have execution against the separate estate of the wife.'

"It is contended, that the 'family of any married woman,' means one who is living separate and apart from her husband. I cannot concur in such construction. The act makes it necessary to sue the husband with her, and requires process of the court to first be had against his estate. It evidently contemplates a case where the husband is within the jurisdiction of the court, and directs that his property shall first be exhausted in maintaining the family. If the act had said 'where debts may be contracted (by any married woman) for the support and maintenance of her family,' such interpretation would not be contended for. For instance, where the husband refuses to provide for the wants of his family, the wife may incur the liability, only rendering her own estate responsible after his is exhausted. If she were living separate and apart from her husband, the debt would most likely be of her own contracting, and then why direct the husband to be sued, and why direct execution to be first had against him? Suppose him to be beyond the jurisdiction of the court, how would suit be brought?

"That a married woman living with her husband may incur debts for necessaries for the maintenance of herself and family, and for which her separate estate may be chargeable, I have no doubt.

"The proviso to the same section is in these words, 'That judgment shall not be rendered for the plaintiff against the wife, unless it shall appear that the debt was contracted by the wife, or incurred for articles necessary for the support of the family of the said husband and wife.' It is contended, that the word *or* should read *and* in this proviso, and that such change is necessary

[Murray *et al. v.* Keyes *et ux.*]

to render it consistent with the foregoing parts of the same section. No such change is necessary. I think its language and meaning plain as it is. Only the usual rules of construction need be applied, to make all the provisions in the section harmonize. It must be read, holding in view the intention of the whole act, and the mind cannot fail to comprehend its meaning. I would treat it thus : " *Or incurred* for articles necessary for the support of the family of the said husband and wife (within the spirit and meaning of the several provisions of this act). If the act only authorized her to incur debts by her own express contract, then such would be the interpretation. If she might otherwise incur debts, then such provisions would be brought to bear, in ascertaining the meaning of the language employed in the proviso. I am satisfied with the language as it is. Any other construction would defeat the very object of the law.

" Why declare that the separate estate of the wife shall not be held ' for the debts or liabilities of her husband,' and at the same time, and in the same act, make it responsible for debts contracted by him, provided they were for the maintenance of his family ? A very large majority of those for whom laws are made, and nine out of ten of those for whose benefit this law was passed, do not accomplish more than a living for themselves and family. To render the estate of the wife equally liable with that of the husband, even for the necessaries of life, would be to defeat the object of the law. And if she may be charged, without her consent, either express or implied, such would be the result. The husband could as effectually encumber her property as if it were his own. It would only be necessary for him either to refuse to labour, or put his earnings in his pocket, and the storekeeper who furnished the necessaries for the family might obtain judgment against the wife, year after year, until he swept away her entire estate. If she had a designing or profligate husband, the act would afford her no protection; if she were more fortunate in that respect, she would not need its guardianship. Why should she be despoiled of her property, without any consent upon her part, and without the power of preventing it ? Such a rendering of the law would not only be manifestly unjust, but would be so grossly inconsistent, as to render the act a dead letter upon the statute book. The very object of the act was to protect the wife against the improvident and indiscreet bargains of the husband. In misfortune, to secure to her from the grasp of his creditors, a home, or the means of supporting her family, and to that end it should have a fair and liberal interpretation. I have given to it just what is necessary to make it effectual, and without doing violence to the language employed. So understanding the law, the following conclusions are deduced from it, viz. :—

" 1. The wife's separate estate is not liable, even for neces-

[Murray *et al. v.* Keyes *et ux.*]

saries for the support of the family of herself and husband, where they reside together, and where the credit was given to the husband at the time, and with no view to charging her estate.

" 2. The wife may incur a debt by her own special contract, and render her estate liable for it. This she may do, whether her husband be at the time living with her or not.

" 3. If she be living separate and apart from her husband, and under circumstances that impose upon her an obligation alone of supporting and maintaining the family, she would be liable for necessaries furnished her. In that case, there could be no dispute as to the propriety of furnishing to her family the necessaries of life.

"4. She may be chargeable with the necessaries for the support and maintenance of herself and family without any special contract on her part, whether she lives with her husband or separate from him, but it must be under such circumstances as the act itself contemplates, and such as will raise an *implied* contract to pay for them.

" What is necessary to render her estate liable in the absence of any agreement or consent upon her part? The inability or refusal of her husband to provide for the daily and pressing wants of his family might render it actually necessary to extend a credit to them. Some cause must exist to render the credit a matter of absolute necessity. As a general rule, the husband is bound to provide for his family, and it can only be changed for good and sufficient reason. The only rules that I can lay down are : 1. That the condition of the family is such as to require the interference of a stranger; that their wants are not otherwise supplied, and that without such furnishing, the family would suffer for the necessary comforts of life : 2. That such articles were furnished with a knowledge of the existing necessities of the family, and with the intention of charging the separate estate of the wife. Under such circumstances there would be actual necessity for the interference, and the goods would be furnished within the meaning and intention of the Act of Assembly. It must be apparent that the real wants of the family were the moving causes for the departure from the general rule. Such being the case, a recovery may be had against the wife without any express contract upon her part.

" Does the present case fall within such rendering of that act ? If the evidence satisfies you that John Keyes was a man of property, carrying on a thriving business apparently at the time the goods were furnished; that his accounts amounted to some five thousand dollars or upwards, in the space of four or five years, with the parties to this suit, can you arrive at the conclusion that a necessity existed for the furnishing by the plaintiff to his family the necessaries of life ? If the goods were sold to him upon his credit, and with no view of charging the separate estate of the

[Murray *et al. v.* Keyes *et ux.*]

wife, there can be no recovery against her. It will not answer, after years of mutual dealing, and a failure to pay a balance on the part of a debtor, to employ this means for its collection. If, under the view we have taken of the law, the facts, in your opinion, do not warrant a finding against Abigail Keyes, you may find in her favour, and against John Keyes for the amount of the account and interest."

To this charge the plaintiffs excepted. The jury found a verdict for the plaintiffs against John Keyes for $609.27, and in favour of Abigail Keyes the other defendant. At a subsequent day, the defendant John Keyes, in open court, agreed to waive all irregularities in the mode of bringing the suit, and that judgment might be entered against him upon the verdict, as if the suit been originally brought against him alone; and confessed judgment in favour of the plaintiffs for $609.27, with interest from the date of the verdict. Judgment was entered in favour of Abigail Keyes against the plaintiffs for costs, and execution awarded in her favour. Whereupon, the plaintiffs sued out this writ, and here assigned for error: 1. The refusal to strike off the appeal from the award: 2. The charge of the court below to the jury: 3. The judgment and execution against the plaintiffs for costs.

*C. P. & G. G. Waller,* for the plaintiffs in error.

*E. Wheeler,* for the defendant in error.

The opinion of the court was delivered by

WOODWARD, J.—This was an action of *assumpsit* against Keyes and wife, brought with a view of charging her separate real estate with the payment of the debt due to plaintiffs.

The husband was properly joined, but the original *narr.*, which contained only the ordinary money counts, was wholly insufficient to affect the wife's separate estate. In general, she is not liable for debts contracted during coverture. The instances in which she is liable are exceptional, and are specified in the proviso to the 6th section of the Married Woman's Act of 11th April 1848, and in the 8th section. A plaintiff who seeks to charge her estate should bring his case within some of the exceptions. Where the declaration contains no averment respecting the origin of the debt, the plea of coverture is a good defence of the wife. If the plaintiff wishes to avoid its effect, he must set forth in a replication the special circumstances which make the wife liable, notwithstanding her coverture, or amend his declaration so as to set forth those circumstances: Mahon *v.* Gormley, 12 *Harris* 83.

The paper-books in this case, which seem to have been prepared in ignorance or disregard of the rules prescribed and pub-

lished in 6 *Harris* 578, contain no pleadings whatever; but upon going to the record we find that there was a plea of coverture to the original *narr.*, and, after an award of arbitrators in favour of the plaintiff and an appeal therefrom by the wife, but not by the husband, an amendment of the declaration, charging in one count that plaintiffs' goods, wares, and merchandise were "furnished to said defendants, at their special instance and request, such goods, wares, and merchandise being articles necessary for the support of the family of said defendants;" and also in another count "the further sum of $600 for a debt contracted by said defendants with the said plaintiffs in the management and care of the property of said Abigail Keyes, wife of John Keyes, and for her use and benefit."

The court below was of opinion that the evidence did not bring the plaintiffs' case within any of the exceptions to the statute. We not only concur with the learned judge, but we cannot construe the statute with reference to these exceptions, without saying that the pleadings, as well as the evidence, failed to make out a case for charging the wife.

The proviso to the 6th section was drawn into construction in Heugh *v.* Jones, 8 *Casey* 433, and in the case of Bear's Administor *v.* Bear, *Id.* 525. See also Glyde *v.* Keister, *Id.* 88.

And we think the effect of that proviso is not changed by what is contained in the 8th section of the act; for though the enacting clause of the 8th section would seem to make the wife's estate liable to an *alias* execution, "*in all cases where debts may be contracted for necessaries for the support and maintenance of the family of any married woman,*" whether they were or were not "*contracted by herself or in her name by any person authorized so to do ;*" yet the proviso to this 8th section is that "judgment shall not be rendered against the wife, in such joint action, unless it shall have been proved, that the debt sued for in such action was contracted *by the wife, or incurred for articles necessary for the support of the family of the said husband and wife.*"

As this last clause of the proviso, repeats the very contingency contemplated in the enacting clause, except only that the family is described as "*the family of the husband and wife,*" instead of "*the family of any married woman,*" it is, as a proviso, insensible. It excepts nothing out of the enacting clause, unless we can extort a difference of meaning from the two phrases descriptive of the family. And we cannot. The family of a married woman might perhaps be held to refer to a family whose husband had absconded, or was living apart from his wife; but then that expression occurs in a clause which requires them to be sued jointly, and which contemplates a joint proceeding, and a levy on her estate only after execution process against him has been returned unsatisfied. It is scarcely possible that the legislature

[Murray *et al. v.* Keyes *et ux.*]

could have had an absconding or separated husband in view, when these joint proceedings were prescribed, for he might be beyond the jurisdiction of the court. We suppose the phrases mean the same thing; and if they do, the last clause of the proviso of the 8th section we repeat is inoperative, unless we read the "*or*" by which it is preceded "*and.*" This is frequently done in the construction of statutes; and if it be done here, we render this clause of the proviso operative, and consistent also with the proviso to the 6th section. Then it will read, that before judgment can be levied on the wife's estate "it shall have been proved that the debt was contracted by the wife, *and* incurred for articles necessary for the support of the family of said husband and wife." And if that must be proved, that must be pleaded. It was neither alleged nor proved in this case, that the debt was contracted by the wife or by any person in her name, but a joint purchase by husband and wife is laid in the amended *narr.*, and a purchase exclusively by the husband was proved in the evidence. The goods were charged on the plaintiffs' books to the husband, and all the circumstances show that the credit was given to him. He lived with his wife and apparently supported her as any other poor man supports his family, by daily toil. The plaintiffs furnished him with a team which he used in lumbering for them, and in farming for himself on his wife's land. He drew his supplies from the plaintiffs' store—the credit being given exclusively to him, as their books prove, and to him alone have they a right to look for payment.

It will doubtless be objected to our reading "or" in the proviso to the 8th section as if it had been written "and," that it excludes the case where a married woman contracts debts not for necessaries, but to improve her separate estate, remove liens, or for other purposes strictly personal to herself. This consequence must be accepted and is right for two reasons: 1st, that such debts are within the proviso to the 6th section, and therefore did not need the protection of the proviso to the 8th section: and 2d, the subject-matter of the 8th section, being debts for family necessaries, it is most congruous to limit the operation of the proviso to family necessaries.

This then was an action in which the wife was sought to be charged as the substantial party defendant. She had a right to appeal from the award of arbitrators. If the consent of the husband were necessary to her appeal, we will infer consent from the absence of objection on his part. There was no error in refusing to strike off her appeal. It would ill comport with the humane spirit of the Act of 1848, to deny trial by jury to a married woman sought to be charged with her husband's debt under the exceptional clauses of the statute—especially, after she had paid all costs, and given bail like any other suitor.

[Murray *et al. v.* Keyes *et ux.*]

But if she was the substantial defendant from the beginning, if she had a right to appeal and did appeal, she stood in court the only defendant against whom the jury could render a verdict or the court a judgment. Her husband's name was there for no other purpose than to signify his assent to her defence of herself. But it was her defence of herself and of her estate. The sole question on the trial was, whether the plaintiffs should have a judgment against *her.*

We have seen that under neither the pleadings nor the evidence were they entitled to such a judgment, and they got neither verdict nor judgment against her. If the record had been made up in due form, the suit would have been against her, impleaded with her husband, and then the court would have been in no embarrassment about the manner of swearing the jury or taking the verdict; but looking at the substance of a very informal proceeding, we consider it of no importance that the jury was sworn as to both husband and wife, and two verdicts taken, one against the husband and the other for the wife. Especially, is the irregularity unimportant, when on the same day the verdict was rendered, the husband voluntarily confessed judgment to the plaintiffs for precisely the amount of the verdict.

I have been the more particular in bringing out the fact, that the husband was not in court as an independent party on the appeal; and that the wife was the sole defendant tried, because it avoids the ugly question of costs which counsel argued as the chief question on the record.

It is not the case of an action against joint debtors, and a verdict against one and for the other; but it was, as tried in court, an action against a married woman and a verdict against the plaintiffs. That verdict of course carries costs. The fact that the husband came in and confessed judgment to the plaintiffs, does not impair the wife's right to recover costs on the issue formed and fought out successfully by herself. They follow, as in other cases of successful defence; and the court having rendered judgment on the verdict she recovered, did right in refusing to set aside her execution against the plaintiffs.

The judgment and proceedings are affirmed.