## Commonwealth *ex rel.* Jackson *versus* Smith.

Quo warranto *to try right to office must be brought during the official life-time of the officer.*—*Officer* de facto *will be considered also* de jure *as to all official acts, unless judicially removed before expiration of term.*

1. If an election for managers of a corporation be not disputed during their term of office by *quo warranto*, and they are permitted to act throughout their term as managers *de facto*, the legality of the next election cannot be questioned for any vice or irregularity in the first.

2. Where the charter did not fix the place at which the annual elections should be held, the board of managers for the time, had the right to fix it as officers *de facto:* their title could only be tested by *quo warranto* brought in the lifetime of their office.

3. A writ of *quo warranto* brought within the term of an office may be tried after the term has expired: but title to a past and defunct office cannot be tried in a proceeding instituted, not against incumbents during its lifetime, but against those succeeding the next year.

CERTIFICATE from the Court at *Nisi Prius.*

This was a proceeding founded on petition of Isaac Jackson, Benjamin Harris, Jesse Glasgow, William Winters, and William De Cordover, setting forth that they were duly elected managers of The Olive Cemetery Company, on the first Monday of April 1857; that Stephen Smith, E. J. Peer, James Lecount, Daniel George, and Charles Simpson, under a pretended election, had usurped the office, and praying that due process of law be awarded against the defendants in this behalf to make them answer to the Commonwealth, and show by what authority they claim to have, use, and exercise the liberties, duties, and privileges of said office.

On this petition a writ of *quo warranto* issued as prayed for. The defendants by plea denied the election of the relators, and claimed that they were duly elected, to which the relators replied that the defendants were not duly elected. *Absque hoc,* &c., and thereupon issue was joined.

The case was tried before LOWRIE, J., and resulted in a verdict for relators, subject to the opinion of the court on the following reserved points:—

1. The election of 1856 not having been disputed by *quo warranto* against the Smith party during their term of office, and they having acted out their term as directors *de facto*, can the next and subsequent elections, regularly held under them, be now disputed for any vice in the election of 1856?

2. Was Vidal entitled to vote under his deed from Smith, under Smith's sheriff's deed, obtained as set out in the answer? if so, ought we now and here to correct the rejection of his vote?

These reserved points were afterwards decided in favour of defendants, and judgment was entered for them *non obstante*

[Commonwealth *v.* Smith.]

*veredicto.* Whereupon this certificate to the court in banc was requested by the relators, for whom the following errors were assigned:—

1. The learned judge erred in deciding the first point reserved in favour of defendants.

2. The learned judge erred in deciding the second point reserved in favour of the defendants.

3. The learned judge erred in entering judgment for defendants *non obstante veredicto.*

All the material facts of the case, and the propositions advocated by the learned counsel who argued the case before the court in banc, will be found in the opinion of this court.

*Longstreth,* for plaintiffs.

*C. Gibbons,* for defendants.

The opinion of the court was delivered, May 6th 1863, by
WOODWARD, J.—Two sets of managers for " The Olive Cemetery Company" were elected on the first Monday of September 1857—the day fixed in the charter for annual elections. On the 21st of that month this *quo warranto* was sued out by Isaac Jackson, and the others of his set, as relators, against Stephen Smith, and the others of his set, who were in possession of the books and properties of the company. The defendants were the acting board of the previous years—had appointed the election of 1857, and were duly elected at the time and place appointed. The relators were elected on the same day, but at another place, and they claimed that the election of the respondents was irregular, because they had not been legally elected in 1856, and therefore had no right to appoint the election for 1857.

Neither the charter nor by-laws fix the place at which the annual elections shall be held. The board of managers for the time being are therefore to fix it. But, say the relators, the acting managers for 1856 were intruders, and not entitled to the offices they exercised. The answer is, they were officers *de facto,* and if you meant to show that they were not officers *de jure,* you should have brought *quo warranto* in the lifetime of their office.

The office was an annual office. How is a title to the office in 1856 to be tried on pleadings that relate entirely to the office of 1857? I have no doubt that *quo warranto,* brought within the term of an office, may be well tried after the term has expired, but it is difficult to see how title to a past and defunct office can be tried in a proceeding instituted, not against any incumbent of that office during its lifetime, but against the incumbent who succeeds for the next year. It is true, that in general the persons elected must take upon themselves to sup-

[Commonwealth v. Smith.]

port the qualifications of the electors and the regularity of the proceedings, and I think the respondents do this when they show themselves elected by lot-owners at an election appointed and held by a board of *de facto* managers. To impeach the title of the respondents we will not go back, in the present suit, to impeach the title of their predecessors. As the relators did not think proper to call the title of these predecessors into judicial question during the year of its vitality, we will for the present presume it unquestionable. Of course it follows that the election they appointed for 1857 was the regular election, and that the respondents were duly elected.

The other question on the record is not reached in the view we have taken of the first. If the election of 1856 is not to be overhauled in this action, then the right of Vidal to vote at that election, according to the title he held from Smith, would be an irrelevant inquiry.