## Commonwealth v. Witman, Appellant.

*Criminal law—Public officers—Municipal corporations—Act of March* 31, 1860, *sec.* 66, *P. L.* 382.

The words "any member of any corporation," in section 66 of the act of March 31, 1860, do not signify a corporation other than the one to which the supplies are to be furnished. These words refer to the corporation purchasing or receiving the supplies or materials, and of which the individual is a member, an officer or an agent. It is plainly intended to prevent anyone who is a member, officer or agent of any corporation, municipality or public institution from being in anywise

interested, directly or indirectly, in the furnishing of supplies or materials to the corporation, municipality or institution with which he is officially connected. The statute intends to prohibit persons from occupying a position in which they will be virtually contracting with themselves.

The prohibition of sec. 66 of the Act of March 31, 1860, P. L. 382, applies to a councilman of a municipal corporation, who is interested directly. or indirectly in furnishing supplies to, or for the use of, the municipality of which he is an officer.

The term "corporation" in its legal as well as in its popular sense, includes an incorporated city.

Where a councilman of a city who is co-owner with his brother of a quarry, joins in the ratifying by councils of a contract with his brother to supply the city with stone from the quarry of which he is a co-owner, he may be convicted of violating sec. 66 of the act of March 31, 1860.

Argued Feb. 19, 1907.  Appeal, No. 338, Jan. T., 1906, by defendant, from judgment of C. P. Berks Co., Oct. T., 1905, No. 40, on verdict for plaintiff in case of Commonwealth ex rel. Ira G. Kutz, District Attorney, v. William Abbott Witman. Before MITCHELL, C. J., FELL, BROWN, POTTER and STEWART, JJ. Affirmed.

Quo warranto for violating sec. 66 of the act of March 31, 1860.  Before ENDLICH, J.

The facts are stated in the opinion of the Supreme Court.

The court gave binding instructions against the defendant.

Verdict for plaintiff upon which judgment of ouster was entered.

*Error assigned* was the instruction of the court.

*W. K. Stevens,* of *Stevens & Stevens, C. H. Ruhl* and *Wm. Abbott Witman, Jr.,* for appellant.—If the plaintiff had any cause of action under the facts as shown by the evidence, the court should have left to the jury the question of whether the respondent was directly or indirectly interested in the contract made by John A. Witman with the city of Reading.

The facts do not show that the defendant has done anything whereby a forfeiture of his office of select councilman from the Thirteenth ward can be decreed : Com. v. Cooke, 50 Pa. 201 ; King v. Burrell, 12 Ad. & E. 460 ; U. S. v. Wiltberger,

18 U. S. 76; State v. Powers, 36 Conn. 77; Miller v. Miller, 44 Pa. 170; Com. v. Gouger, 21 Pa. Superior Ct. 217; In re School Directors of Kingsley Twp., 5 Pa. Dist. Rep. 750; McHenry's Petition, 6 Pa. Superior Ct. 464; Com. v. Krickbaum, 199 Pa. 351; Trainer v. Wolfe, 140 Pa. 279; Com. v. Christian, 9 Phila. 556; Washington Twp. v. Shoop, 2 Pa. Dist. Rep. 639.

*Frederick W. Nicolls*, with him *Harry F. Kantner*, for appellee.—Under the evidence in the case the court below had a right to determine that the respondent was interested in the contracts for furnishing supplies to the city: Hunnings v. Williamson, L. R. 11 Q. B. Div. 535; Doll v. State, 45 Ohio, 445 (15 N. E. Repr. 293); Milford Borough v. Milford Water Co., 124 Pa. 610; Com. v. DeCamp, 177 Pa. 112; Todd v. Robinson, L. R. 14 Q. B. Div. 739; Whiteley v. Barley, L. R. 21 Q. B. Div. 154; McIlhenney v. City of Superior, 32 Neb. 744 (49 N. W. Repr. 705); Bell v. Quin, 4 N. Y. Super. Ct. 146; Meigs v. Lewis, 164 Pa. 597.

Sec. 66 of the act of 1860 applies to a councilman who has an interest in a municipal contract with himself, with his firm, or with another person, even though such contract is not with a corporation: Com. v. Hancock, 2 W. N. C. 557; Coxe's Case, 1 Pa. Dist. Rep. 702; Com. v. Hoyt, 31 Pa. C. C. Rep. 200; Rush Twp. Overseers v. Lynn, 4 Pa. Dist. Rep. 651; Kennett Elec. Light Co. v. Kennett Square Borough, 4 Pa. Dist. Rep. 707; Com. ex rel. Kepner v. Shepp, 10 Phila. 518; Com. v. Caven, 15 Pa. Dist. Rep. 291; Milford Borough v. Milford Water Co., 124 Pa. 610; Com. v. DeCamp, 177 Pa. 112; Com. v. Miller, 31 Pa. Superior Ct. 309.

OPINION BY MR. JUSTICE POTTER, April 1, 1907:

The portion of section 66, of the Act of March 31, 1860, P. L. 382, which is here directly involved, provides as follows: " nor shall any member of any corporation or public institution, or any officer or agent thereof, be in anywise interested in any contract for the sale or furnishing of any supplies, or materials to be furnished to, or for the use of, any corporation, municipality, or public institution of which he shall be a member or officer, or for which he shall be an agent, nor directly

nor indirectly interested therein, nor receive any reward or gratuity from any person interested in such contract or sale."

It is contended by counsel for appellant that the words "any member of any corporation," signify a corporation other than the one to which the supplies are to be furnished. We do not so read the act. These words refer to the corporation purchasing or receiving the supplies or materials, and of which the individual is a member, an officer or an agent. It is plainly intended to prevent anyone who is a member, officer or agent of any corporation, municipality or public institution from being in anywise interested, directly or indirectly, in the furnishing of supplies or materials to the corporation, municipality or institution with which he is officially connected. The statute intends to prohibit persons from occupying a position in which they will be virtually contracting with themselves. In dealing with this identical section, in Com. v. Miller, 31 Pa. Superior Ct. 309, Judge RICE said: " The object which the legislature had in view was the prevention of the danger of temptation, incident to a relation in which the self-interest of the officer of the corporation or municipality purchasing the supplies may come into conflict with the interest of the corporation or municipality." He also cites an apt statement from 8 Tomlin's Brown, 72, quoted and approved by this court in Everhart v. Searle, 71 Pa. 256, as follows: " No man can serve two masters. He that is intrusted with the interests of others cannot be allowed to make the business an object of interest to himself, because, from a fraility of nature, one who has the power will be too readily seized with the inclination to use the opportunity for serving his own interest at the expense of those for whom he is intrusted. The danger of temptation from the facility and advantage of doing wrong which a particular situation affords, does, out of the mere necessity, work a disqualification."

We have no doubt whatever, that the prohibition of section 66, of the act of March 31, 1860, applies to a councilman of a municipal corporation who is interested directly or indirectly in furnishing supplies to, or for the use of, the municipality of which he is an officer. The defendant in this case, being a councilman of the city of Reading, is clearly within the class of officials enumerated in the statute, who are for-

bidden to have any interest in furnishing supplies to the municipality. The attitude of this court has always been consistent with this view. Thus in Milford Boro. v. Water Co., 124 Pa. 610, it was said : " The act of 1860 is another and a valuable safeguard thrown around municipalities. It was passed to protect the people from the frauds of their own servants and agents." Chief Justice STERRETT said in Com. v. DeCamp, 177 Pa. 112 : " Section 66 is virtually a transcript of sections 1 and 2 of the Act of April 26, 1855, P. L. 328. As was doubtless intended by the revisers of our criminal code, its scope is broad and comprehensive." And in Marshall v. Ellwood City Boro., 189 Pa. 348, Justice GREEN, said : " The criminal code of 1860 prohibited a member of a municipality from being interested in a contract for furnishing supplies or materials to the corporation, and imposed personal penalties upon him if he violated the act."

The learned trial judge in this case well said : " There can, however, be no doubt that the term ' corporation ' includes, in its legal as well as in its popular sense, an incorporated city. The sole ground upon which the argument that it is not to be so understood here rests, is the omission of the term ' municipality ' in the words of the second clause, ' nor shall any member of any corporation or public institution,' etc. Yet it is clear that the joinder of ' corporation or public institution ' without anything more, indicates what sort of corporation is meant, i. e., corporations of a public nature, corporations in the nature of public institutions, ejusdem generis with such. The word ' corporation,' therefore, in this phrase standing alone, has virtually the same meaning as if the word ' municipality ' were added to it. So true is this that it cannot, without going further, be regarded as including mere private corporations. If, then, the phrase ' any corporation, municipality or public institution ' is descriptive of a certain class of corporations as the subject and the only subject of the legislation; and if the phrase ' any corporation or public institution ' is, under accepted rules of interpretation, descriptive of the same class, it follows that the same meaning must be given to both, notwithstanding the insertion in the one, and the omission from the other, of a term which is fairly embraced in the more comprehensive of the terms occurring in

both. It is, indeed, well settled that the same language repeatedly occurring in the same statute is to be understood in the same sense throughout: Maxwell, Int. of Stat., p. 394. And this means not only literally identical phraseology, but, disregarding insignificant variations, phrases whose material constituents and legislative or legal import are the same: Mayor, etc., of Phila. v. Davis, 6 W. & S. 269; Murray v. Keyes, 35 Pa. 384; Com. v. Navigation Co., 66 Pa. 81. If the phrase 'any corporation or public institution' is fairly synonymous with 'any corporation, municipality or public intitution,' then the addition to the former of the words 'or any officer or agent thereof'. supplies the enumeration of 'councilman, burgess, trustee, manager or director of any corporation, municipality or public institution' in the first clause of the enactment, and it becomes perfectly clear that what in the second was intended to be prohibited and must be understood to be prohibited, was, inter alia, the interest of any councilman in any contract for supplies to which the municipal corporation he represents is a party."

The testimony as to the facts in this case is undisputed, and we take the statement of them from the opinion of the court below refusing a new trial, as follows: " In the spring of 1905, the defendant and his brother, John A. Witman, were co-owners of a tract upon which defendant operated a stone quarry and crusher. John was not concerned in this or any other quarry or crusher. Neither was he engaged in the business of contracting. He was a brakeman on a railroad. Defendant was and still is a member of the select council of the city of Reading. On May 22 councils passed, and a few days thereafter the mayor approved a resolution authorizing the board of public works of the city to purchase flint spalls in such quantities as they should deem proper, for experimental use upon 'certain' streets. The board thereupon visited defendant's quarry, were by him shown about and made acquainted with the mode of preparing the stone for use, the different sizes, and so on. Without any formal contract being entered into, the board, through its subordinate officials, proceeded to order and defendant furnished and delivered spalls to such places, at such times, and in such quantities as he or his employees were directed by these officials, beginning on

June 3, 1905, and continuing to some time in August, 1905, aggregating about 2,800 tons. John never appeared before the board, nor had any negotiations with it, relative to the supplying of spalls. The city put a weighmaster at defendant's quarry, who ascertained and reported the quantities of spalls taken away. The accounts were kept by the city and the bills made in John's name. Warrants for payment at the rate of eighty-four and one-half cents per ton were drawn and delivered to and receipted for by him and the amounts called for therein paid to him. In the meanwhile, on May 25, 1905, John had handed into the board a proposal to furnish to the city, during the year beginning June 1, 1905, paving sand at such times, quantities and places as should be required, at the price of eighty-four and one-fourth cents per ton. The proposal was approved by the board and a formal contract drawn accordingly, which was executed upon its ratification on June 6, by councils in joint convention, defendant being present and aware of what was being done, and not marked 'not voting.' Sand to the amount of about thirty tons was subsequently ordered from and delivered by defendant in the same way in which spalls were ordered and delivered, the accounts being kept, bills made out and warrants drawn, receipted for and collected in the same way. Indeed, the contract for sand was treated and regarded as including spalls. On June 8, defendant and John, in pursuance of an oral understanding dating back to about June 1, entered into a written, sealed and acknowledged agreement whereby defendant was to furnish to John, during the period of one year ensuing, at the rate of seventy-nine and one-half cents per ton, 'all such sand and spalls as (John) may be desirous of purchasing.' The sand and spalls furnished by defendant to the city were by him charged to John. But apart from the proposal and the subsequent execution of the formal contract of June 6, John's active connection with the entire triangular transaction, both as regards sand and spalls, was confined to the receipt of the money due by the city from time to time, and the handing over to defendant of sums equal to seventy-nine and one-half cents per ton, retaining for himself five cents per ton. . . . That the furnishing of sand and spalls at seventy-nine and one-half cents per ton was profitable to the defendant is part of his own testimony."

The " interest " thus disclosed upon the part of the defendant, in the furnishing of supplies to the city, was, in the opinion of the trial judge, clearly such as is forbidden by the statute, to a councilman.   The act provides that he is not to be interested " in anywise," either " directly" or "indirectly."   As defendant was paid by the ton for the materials which he delivered to the city, and at a profitable rate, it was certainly to his interest to promote the fulfillment of the contract; and both on reason and authority, this is sufficient to constitute an interest in the contract : Hunnings v. Williamson, L. R. 11 Q. B. Div. 533, which was as here, a case in which the contract was taken in the name of the brother.   So also in McElhinney v. City of Superior, 32 Neb. 744, the city made a contract for electric light with one whose brother was a councilman of the city, and by reason of his joint ownership with his brother of the water power, which was to be used to generate the electricity, the court held that the councilman was " interested " in the contract.   See also Doll v. State, 45 Ohio, 445 ; and Bell v. Quin, 4 N. Y. Superior Ct. 146.

The only issue involved in this case was whether the defendant had such an " interest " in the matter of furnishing supplies to the city of Reading, as was, under the statute, unlawful.   The question of fraudulent intent, or unfairness in price, was not involved : Com. v. Miller, 31 Pa. Superior Ct. 309.

There being no dispute as to the existence and terms of the contracts, nor as to the manner of their fulfillment by the defendant, it then became the duty of the court to deal, as a matter of law, with their interpretation and effect, in the light of the act of assembly.   With his conclusion that the admitted facts of this case convict defendant of having an interest prohibited by the statute, we are in entire accord.

The specifications of error are dismissed, and the judgment is affirmed.