## Commonwealth v. Ayers.

*Quo warranto — Suggestion of district attorney — Contracts — Act of March 31, 1860.*

1. The district attorney, under the Act of May 3, 1850, P. L. 654, has all the powers formerly vested in a deputy attorney-general, and where the district attorney officially files a suggestion for a *quo warranto*, it will be presumed that he acted properly, and no inquiry will be made into the alleged political or other motives which may have led to the starting of the proceeding.

2. Where a suggestion is filed, signed by the district attorney officially, it is not necessary that it should be sworn to by himself or any other party.

3. A writ of *quo warranto* issued at the suggestion of the district attorney in his official capacity to oust a school director from office for having violated section 66 of the Act of March 31, 1860, P. L. 400, in having been president and stockholder in a corporation which had furnished supplies and materials to the school district during his term of office, vouchers for payment of which he had approved as director, will not be quashed on the ground that the goods were sold in the regular way over the counter without a formal contract, or that the contract in those instances where there were contracts may not have been entered into corruptly, or that the amounts involved were small as compared with the business of the corporation or the needs of the district; the amount is not to be considered.

Motion to quash writ of *quo warranto.* C. P. Northampton Co., June T., 1922, No. 78.

*T. McKeen Chidsey,* District Attorney, for Commonwealth.

*Asher Seip* and *Orrin Serfass,* for relator.

STEWART, P. J., Dec. 18, 1922.—This is a rule to show cause why a writ of *quo warranto* should not be quashed. It appears from the record that the writ issued upon suggestion of the district attorney. It was signed by him in his official capacity. One Arthur W. Wilkinson made the affidavit, and in it alleged that he was a resident and taxpayer of Easton, Northampton County, Pennsylvania, a property holder and largely and pecuniarily interested in the prosperity of the school district, and that the facts in the suggestion were true to the best of his knowledge, information and belief. The suggestion averred that in November, 1915, Orville D. Ayers was elected a director of the School District of the City of Easton; that he qualified and performed his duties for six years, and that in November, 1921, he was re-elected, and that he qualified and has been performing his duties as school director up to the date when the suggestion was filed. It averred that he was a stockholder

3 D. & C.

and president of Losey & Company, Inc., a corporation organized under the laws of Pennsylvania and doing business in Easton; that at various dates during his present term of office and during his prior term, Losey & Company, Inc., furnished supplies and materials to the school on the written order and request of the school district, and that the said defendant, as a director of the district, approved the contracts and signed the vouchers for the payment of the same to Losey & Company, Inc., and that the aforesaid acts were in violation of the Act of Assembly approved March 31, 1860, § 66, P. L. 400, where it is enacted that "it shall not be lawful for any councilman, burgess, trustee, manager or director of any corporation, municipality or public institution to be at the same time a treasurer, secretary or other officer subordinate to the president and directors, who shall receive a salary therefrom or be the surety of such officer, nor shall any member of any corporation or public institution, or any officer or agent thereof, be in anywise interested in any contract for the sale of or furnishing of any supplies or materials to be furnished to or for the use of any corporation, municipality or public institution of which he shall be a member or officer, or for which he shall be an agent, nor directly nor indirectly interested therein, nor receive any reward or gratuity from any person interested in such contract or sale; and any person violating these provisions, or either of them, shall forfeit his membership in such corporation, municipality or institution, and his office or appointment thereunder, and shall be held guilty of a misdemeanor, and, on conviction thereof, be sentenced to pay a fine not exceeding $500: Provided, that nothing in this section contained shall prevent a vice-president of any bank from being a director of such bank or of receiving a salary as vice-president." The defendant moved to quash the writ, and assigned seven reasons in support of the motion; thereupon the present rule issued. The district attorney filed an answer, and testimony was taken in open court. We shall first consider the seventh reason. That reason alleges substantially that the proceeding was not brought in good faith, but to secure political control of the school board in the interest of a candidate for the position of superintendent of schools, and as a means of revenge against the defendant for his vote on the re-election of the superintendent of schools, and that the proceeding was brought to secure the ouster of the defendant, so that certain people in the City of Easton could secure an election of another superintendent who would be favorable to them; and that Arthur W. Wilkinson was one of the people forming a combination to effect the purposes aforesaid. The defendant called the district attorney as a witness. He testified that certain citizens of Easton, about eighteen in number, met at his office on May 2, 1922, and that Wilkinson laid before them the facts contained in the suggestion; that one of the citizens acted as a chairman, and that a resolution was passed asking that the district attorney should proceed against the defendant, but he unequivocally avowed that he was the relator "officially and not a citizen." It was, however, contended that, notwithstanding that testimony, the evidence showed that Wilkinson acted from the motives aforesaid, and that the court, in the exercise of its discretion, should dismiss the writ because he made the affidavit and appeared to be the moving spirit.

The history of the writ of quo warranto in Pennsylvania is interesting. Mr. Justice Strong, in Com. ex rel. McLaughlin v. Cluley, 56 Pa. 270, has examined the matter very carefully. It was there held: "The enactment that writs of quo warranto may be issued on the suggestion of any person desiring to prosecute the same means any person having an interest to be affected." That case may be studied in connection with the exhaustive opinion of Mr. Chief Justice Gibson, in Com. v. Burrell, 7 Pa. 34, where it was held: "A writ

of *quo warranto* does not lie except at the suggestion of the attorney-general against one holding the office of judge of a Court of Common Pleas." In those cases and in Com. v. Dillon et al., 81* Pa. 41, the rule is laid down as to who is to sign the suggestion. In the last case it was held: "When the writ is issued on the information of the attorney-general, it is for a public wrong; when by a private relator, it is to redress a private injury; though the object is the same, they are instituted on different grounds." See, also, Com. v. Pfromm, 255 Pa. 485. District attorneys, with reference to this writ, now possess all the powers of attorneys-general. In Gilroy et al. v. Com., 105 Pa. 484, it is held: "Under the Act of May 3, 1850, § 1, P. L. 654, which vests in district attorneys 'the duties now by law to be performed by deputy attorneys-general,' a writ of *quo warranto* may issue on the information of the district attorney to determine the right of certain persons to act as school directors." It is, however, contended that, notwithstanding the suggestion was made by the district attorney, the court has power to examine into his motives, especially where it appears that the suggestion was sworn to by a private citizen, and where the district attorney admits that a meeting was had, as referred to above, and Gilroy et al. v. Com., 105 Pa. 484; Com. v. Jones, 12 Pa. 365, and Com. v. McCarter, 98 Pa. 607, and various Common Pleas cases, were cited in support of the contention. Most of these cases were cases of private relators, where the rule is unquestioned that the writ is not a writ of right, and that the courts are not bound to issue it except in the exercise of a sound discretion. The name had been carried out by successors of the founder of the business. Upon the conclusion of the partnership, a controversy arose as to the disposition of the firm name. To the cases cited by the learned counsel for the defendant we may add Com. v. Luker, 258 Pa. 602, which was the case of a private relator. However, in the opinion, Mr. Justice Moschzisker, on page 607, said: "In Com. ex rel. Pughe v. Davis, 109 Pa. 128, we ruled that a writ of error did not lie to the refusal of a *quo warranto*; hence, the present review is on *certiorari*, and the only matter properly before us is the order appealed from. The authority just cited involved a public office, and both there and in numerous other such cases we have said that a court's exercise of discretion in refusing a *quo warranto* would not be reviewed. In that particular class of cases (involving public office) we have gone even further and held that the motive of the relator might be considered by a court in exercising its discretion as to the issuance of the writ." When we turn to the case referred to by the learned judge, we find that that was a case of a private relator, although the subject-matter involved was a public office.

We have examined many cases, both in Pennsylvania and authorities of other states, and we have found no case where the court quashed a writ officially brought by the attorney-general or the district attorney for the reasons aforesaid. What judges of the Supreme Court evidently had in mind, when they spoke of the exercise of the court's discretion in cases like the present, was that which moved us to sustain defendant's fifth reason, which was that twenty-one of the twenty-four different transactions referred to in the suggestion took place in the defendant's first term. We so ruled on the hearing, and subsequent examination has convinced us that we were correct. The judgment in the present proceeding is that of ouster from his position. The criminal act connected with it has nothing to do with the removal from office. This proceeding may be tried first or the criminal proceeding: Com. v. Walter, 83 Pa. 105. In Com. v. Allen et al., 70 Pa. 465, it was held: "The forfeiture arose from the unlawful relation of surety and councilman, not upon conviction of the misdemeanor. *Quo warranto* is a proceeding at law,

3 D. & C.

and the fact of the defendant's right to office is trial by a jury; conviction is unnecessary to give jurisdiction." In Com. v. Miller, 31 Pa. Superior Ct. 309, a criminal indictment under the act, President Judge Rice said: "A corrupt or dishonest intent or unfairness in the price charged or contracted for the supplies or materials is not an essential of the offence. Therefore, the allegation of the indictment that the defendant was 'corruptly' interested in the contract was surplusage, and properly was so treated by the trial judge in the charge and the answers to the defendant's points: Com. v. Frey, 50 Pa. 245. It was not encumbent on the Commonwealth to prove the allegation, and, for the same reason, disproof of it by evidence of the fairness of the price paid or agreed to be paid for the supplies or materials would not have constituted a defence." The cases where the judges exercised discretion in granting or refusing the writ in the cases of public officers referred to the expiration of their term of office. In Com. ex rel. v. Reigart, 14 S. & R. 216, it was held: "The granting an information in the nature of a *quo warranto* is discretionary with the court, and it *seems* that it will not be granted when it cannot be brought to trial before the expiration of the office to which it refers." In Com. v. Smith, 45 Pa. 59, it was held: "A writ of *quo warranto* brought within the term of an office may be tried after the term has expired, but title to a past and defunct office cannot be tried in a proceeding instituted, not against encumbents during its lifetime, but against those succeeding the next year." In Com. v. Mamatey et al., 257 Pa. 327, it was held: "Where, on appeal from a judgment on a verdict for defendants in a *quo warranto* proceeding to test defendants' right to hold office in a corporation, it appeared that the terms of defendants as such officers had expired, the judgment of the lower court was affirmed without regard to the merits, the question being merely academic." In the late case of Com. v. Floyd, 274 Pa. 172, it was held: "Where a relator in a *quo warranto* proceeding delays his appeal and takes no step to advance a hearing upon it, and, pending final hearing, the term of office in dispute expires, the question is wholly moot, and the appeal will be dismissed." We so decided in Com. v. Schweitzer, 15 Northamp. Co. Repr. 47. What then is the position of the present case? Having in mind that the powers of the district attorney in Pennsylvania are equal to those of the deputy attorney-general with reference to *quo warranto*, let us examine the authorities. In 32 Cyc., 1436, it is said: "The common law writ was a writ of the king, the attorney-general *ex-officio* filing an information in the nature of a *quo warranto* and having the writ issued without application or leave of court, and generally in the United States proceedings instituted by the attorney-general *ex-officio* may be brought as of right without leave of court." On page 1457 it is said: "An information filed by a public officer should have his official signature affixed; but if the information was filed with the actual consent and in the name of such officer, and he appears to conduct the proceedings, the want of his signature will not sustain a motion to quash. In accordance with the rule applicable to ordinary civil actions, neither an information in the nature of a *quo warranto* nor a plea thereto need be verified unless a statute so requires, but in some states statutes have been passed requiring the pleadings to be verified." In Com. v. Allen, 128 Mass. 308, it is said: "The attorney-general has the right in the name and behalf of the commonwealth, at his own discretion, to file an information against one usurping a public office; the court has no authority to grant or to withhold leave to file it; and the mention of relators in the information is mere surplusage, which does not affect the validity of the information or the form of the judgment to be rendered thereon." In High's Extraordinary

Legal Remedies (2nd ed.), § 703, it is said: "Where the information is filed by the proper officer of the state, as by the solicitor general, duly authorized by law to prosecute informations, the court will presume that the proceedings are had in his official capacity. Nor will this presumption be rebutted by the fact that he has recited in the information an order of one branch of the state legislature requesting him to file such information, the order being rejected as mere surplusage and not affording sufficient grounds for sustaining a motion to quash the information." In Com. v. Snyder et al., 261 Pa. 57, it is held: "There is a presumption that a public official will not abuse his trust or act with a view to evading the duties of his office." In Com. v. City of South Bethlehem et al., 14 Northamp. Co. Repr. 179, the late President Judge Scott applied the following quotation to that case, where the writ had been issued by the Attorney-General of Pennsylvania, in which he said: "When the attorney-general files the suggestion upon his official responsibility, no prior rule to show cause is required." He then quoted as follows from Rush v. Cavenaugh, 2 Pa. 189: "The office of attorney-general is a public trust which involves, on the discharge of it, an almost boundless discretion by an officer who stands as impartial as a judge. . . . Usage has sanctioned the practice of employing professional assistants to whom he may confide the direction of the particular prosecution; . . . but the professional assistant, like the regular deputy, exercises not his own discretion, but that of the attorney-general." In Com. v. Capp, 48 Pa. 53, Mr. Chief Justice Woodward said: "It would be very strange if the Commonwealth might not appeal to her own tribunals for justice without the special consent of certain of her own officers. The abuses and evils which would come from an indiscriminate indulgence of defendants cannot be expected to spring from the rare instances in which the sovereign would invoke the appellate jurisdiction, and, hence, no restraints have been imposed by statute upon the sovereign, and we will impose none by judicial construction. The *certiorari* in this case was sued out by the district attorney. He represents the Commonwealth in the criminal prosecutions of Clinton County. As to him, the writ was a matter of course, which needed no sanction of a judge or of the attorney-general." In Rowand v. Com., 82 Pa. 405, on page 409, Mr. Justice Woodward said: "Whether the exclusion of the attorney-general from the connection he formerly held with the criminal business of the Commonwealth, and the transfer of his powers to the district attorneys of the several counties, were well or ill-advised is a legislative and not a judicial question." A case might arise wherein a district attorney might act improperly; but this case is not one of those, and ample provision has been made by the legislature for the appointment of special district attorneys in such cases. Being an official prosecution, we cannot inquire into the subject-matter of the seventh reason, *supra*. In High's Extraordinary Legal Remedies (2nd ed.), § 697, it is said: "The right to institute the proceedings or to file the information is regarded as incident to the office of the public prosecutor or attorney-general, and the courts will not examine into the political or other motives which may have led to the filing of the information, nor will they inquire who is the real relator, but it will be presumed that the proceedings are properly instituted by the attorney-general." In In re Application of Attorney-General, 3 N. Y. Supp. 464, it is said: "Under Code Civil Proc., N. Y., § 1798, conferring on the attorney-general, 'upon leave granted,' power to bring an action against a corporation to vacate its charter, it is not for the court to inquire whether the bringing of the proposed action is a wise administrative act, but only whether the attorney-general alleges a *prima facie* case, or a case of such gravity that it should be judicially determined."

3 D. & C.

In Com. v. Shrontz, 52 Pitts. L. J. 317, it is said: "Upon a *quo warranto* against a borough councilman, the writ contained no other name than the district attorney's of the county. The answer of the respondent alleged, *inter alia*, that, after his election to council, he had been offered a bribe, by a person whose name was not disclosed, to vote for a certain person as president of borough council, and that this person had induced the district attorney to issue this writ upon false information. Upon answer to a rule granted by the court to show cause why the district attorney should not disclose the name of the person giving the information, it was held that the district attorney could issue the writ upon his official responsibility, and his answer that it was issued, and also upon information received by him, is sufficient and the rule should be discharged." In fact, in the present case, if Wilkinson had not made the affidavit, doubtless the matter would not have been thought of. In Com. v. B. F. Mevay, Jr., 10 Pa. Justices' Law Repr. 10, it was held: "In a suggestion for a writ of *quo warranto*, it is only necessary to consider whether or not it contains sufficient averment of alleged fact to call upon the respondent to make answer to meet the requirements of the Act of May 28, 1907, § 1, P. L. 262. The district attorney, who is the public prosecutor and the agent for the attorney-general, signs the suggestion for a writ of *quo warranto*, and no oath as to the truth of the facts set forth in the petition, or the belief in their truth, other than that official's oath of office, is required. When the writ of *quo warranto* is asked for by the attorney-general, no bond is required for costs, as the matter then becomes one of public concern. That 'the suggestion filed does not contain an averment that any of the so-called contracts referred to therein was entered into with the knowledge of the defendant' is immaterial where the averment is that, as a member of the finance committee of the council, a member of that committee voted to pay the bill contracted by the council, formally or informally, orally or in writing, with the person, partnership or corporation of which he was an agent or employee, or in any way interested in any contract for the sale or furnishing of any supplies or materials to be furnished to or for the use of, or any work to be done for, such borough." In Com. v. P. & R. Ry. Co., 3 Legal Gazette, 371, it was held: "The Commonwealth's suggestion for the issuance of a writ of *quo warranto* need not be under affidavit, though the Act of Assembly of June 14, 1836, P. L. 621, makes no exception in its general requirements of an affidavit." From all points of view, therefore, the seventh reason cannot prevail. The second, third and fourth reasons refer to alleged defects in the suggestions. Some of the authorities last cited discuss the form of the suggestion. In no late case that we have examined has any great particularity been insisted upon in the form of the suggestion. The same simplicity of pleading that prevails in criminal indictments has been adopted with reference to suggestions. Even before the passage of the Criminal Procedure Act, in a very well-considered case, Com. v. Commercial Bank of Pennsylvania, 28 Pa. 383, which was argued by some of the most eminent lawyers in Pennsylvania, the Supreme Court held: "An information upon which a writ of *quo warranto* is founded is amendable either on or at any time before the trial. Therefore, objections to mere matter of form in the information, which may be removed by amendment, do not furnish a ground for quashing the writ. The law of Pennsylvania in regard to the form of pleading in *quo warranto* remains as it was before the Act of 1836. The attorney-general may disclose in his information the specific ground of forfeiture, or he may merely set forth the franchises alleged to have been illegally exercised, and call upon the defendant to show by what authority they are held." There is no defect in the suggestion.

Commonwealth v. Ayers.

The first and sixth reasons raise the question that there was no contract for the sale of any supplies and materials between the Easton School District and Losey & Company, Inc., within the meaning of the Act of Assembly of March 31, 1860, and that the goods were sold "in the regular way, over the counter, by said Losey & Company, Inc.., upon orders drawn by the school authorities upon said Losey & Company, Inc., in favor of divers persons or departments through which the schools are conducted and the property of the school district kept in repair." The testimony established the facts to be as set forth in these reasons, but, as we stated above, it also showed that the defendant had, in writing, approved payments to his company. It is true that, under the ruling we made as to his present term of office, only $110.78 were involved in the three transactions, a very inconsiderable sum, considered either with respect to the business of Losey & Company, Inc., or the needs of the school district. It is also true that that sum was for items that evidently, from the vouchers, were gotten in emergencies, but all the cases hold that the amount is not to be considered. In one of the cases there was an ouster from public office where only $4 were involved. Neither is the question of emergency involved. There is no exception in the act, and its purpose is well considered by Mr. Justice Potter in Com. v. Witman, 217 Pa. 411, on page 414, as follows: "It is plainly intended to prevent any one who is a member, officer or agent of any corporation, municipality or public institution from being in anywise interested, directly or indirectly, in the furnishing of supplies or materials to the corporation, municipality or institution with which he is officially connected. The statute intends to prohibit persons from occupying a position in which they will be virtually contracting with themselves. In dealing with this identical section, in Com. v. Miller, 31 Pa. Superior Ct. 309, Judge Rice said: 'The object which the legislature had in view was the prevention of the danger of temptation incident to a relation in which the self-interest of the officer of the corporation or municipality purchasing the supplies may come into conflict with the interest of the corporation or municipality.' He also cites an apt statement from 8 Tomlin's Brown, 72, quoted and approved by this court in Everhart v. Searle, 71 Pa. 256, as follows: 'No man can serve two masters. He that is intrusted with the interests of others cannot be allowed to make the business an object of interest to himself, because, from a frailty of nature, one who has the power will be too readily seized with the inclination to use the opportunity for serving his own interest at the expense of those for whom he is intrusted. The danger of temptation from the facility and advantage of doing wrong which a particular situation affords does, out of the mere necessity, work a disqualification.'" It also appeared that there were no written contracts, and that the provisions of the School Code as to the purchase of supplies and materials were not followed. It is argued that the act in question, being highly penal in character, must receive a strict construction, and that it cannot be extended by implication beyond its precise meaning. As a general proposition, that is true, but the way in which the act should be looked at is well expressed by President Judge Rice, in Com. v. Miller, 31 Pa. Superior Ct. 309, as follows: " 'In a statute, the meaning of the words may be this or that, according to the subject, context and other particular circumstances. The province of the courts is to determine the meaning the legislature intended them to have. The rule of strict construction in favor of the accused is not violated by giving the words a reasonable meaning, according to the sense in which they were intended, even though in a different connection a more restricted meaning would be ascribed to them. 'Strict construction is not the same thing as construing everything to defeat

3 D. & C.

the action,' or, we may add, the prosecution. 'This is not what is meant by the expression:' Thompson, J., in Bartolett v. Achey, 38 Pa. 273;' Com. v. Gouger, 21 Pa. Superior Ct. 217.' " It is also expressed by Judge Endlich in Com. v. Witman, 15 Dist. R. 210, which was affirmed in 217 Pa. 411, as follows: "It must be conceded at the very outset that section 66 of the Act of 1860 is a penal enactment, and as such subject to the rule of strict construction. That rule, however, does not mean that the court is bound to accept an interpretation which is hostile to the manifest purposes of the enactment or to withdraw from its operation a case falling both within its scope and the fair sense of its language: Maxwell, Interp. of Stat., 319. As laid down in Com. v. Cooke, 50 Pa. 201: 'It is true that a penal law must be construed strictly and according to its letter. But this strictness, which has run into an aphorism, means no more than that it is to be interpreted according to its language. Literal interpretation is but a figurative expression, meaning, perhaps, that we are to adhere closely to the language; we are not to change the signification by dropping even a letter. The purpose of the rule is to prevent acts from being brought within the scope of punishment, because courts may suppose they fall within the spirit of the law, though not within its terms.' The strictness contemplated does not consist in giving words the narrowest meaning of which they are susceptible: Wilberforce, Stat. Law, 246. It must be a 'reasonable strictness' (Chapin v. Persse, etc., Works, 30 Conn. 461), not one which will defeat the obvious intention of the legislature." The cases of Trainer et al. v. Wolfe et al., 140 Pa. 279, and Com. v. Krickbaum, 199 Pa. 351, so earnestly brought to our attention, are entirely different from the present case. In the former case the Supreme Court decided that the act did not cover a purchase by a school board of real estate in which a director was interested simply because "real estate" was not mentioned in the act. In the latter case a county commissioner became surety for a county treasurer. The Supreme Court decided that a county commissioner was not a councilman, a burgess, a director, a trustee or a manager of a corporation; hence, did not come within the terms of the act. Having in mind what Judge Rice and Mr. Justice Potter said as to the intent of the act, we have no doubt but that the present case comes within its terms. It is true that the positions taken by the learned counsel for the defendant have been supported by many learned judges of the lower courts, and it is equally true that just as many have decided the other way, but, in our judgment, all doubt as to the present case is taken away by a case not cited on the argument by either side, and which seems to us to be on all fours with the present one. It is Com. v. Egan, 234 Pa. 24. That was a suggestion by the District Attorney of Allegheny County against the Burgess of East Pittsburgh, who was interested in a plumbing company. "Upon the trial, the jury found a special verdict that, at the time the purchases were made from the Egan Plumbing Company, the defendant was a stockholder in that company and was president of it; and they further found that when the purchases were made he did not know of them until after the goods had been delivered and the work done, and had knowledge of them only when warrants were issued for the same and of the payment of the warrants, and that if, upon this state of facts, the court should be of opinion that the plaintiff was entitled to recover, then to find for the plaintiff, and otherwise to find for the defendant." The matter was thus left to the decision of President Judge Shafer, and in his opinion he said: "It is urged upon us by counsel for the defendant that it was not the intention of the act to deprive a man of his office because some employee of a company of which he was a stockholder took it upon himself, without the knowledge of

the stockholder, or perhaps against his express order, to sell some small item to an officer of the borough for the use of the borough, and we are not prepared to say that there may be cases within the broad and legal terms of the act to which it should be held not to apply. In the present case, however, there were a number of small sales at different times, as admitted by the defendant in his pleadings, and he knew of them when warrants were drawn for their payment, and knew of the payment of the warrants, and although it is not so found in the special verdict, it appeared from the evidence that he endorsed these warrants himself as president of the company. These facts show not a repudiation of the contracts when they came to his knowledge, but an adoption of them. It has been frequently held that the amount involved in such cases makes no difference, and that the intention of the party is also immaterial. The act makes certain relations between the officer and the borough unlawful without reference to whether they are knowingly or corruptly entered into, and the legislature has undoubted power to make such a provision, as the deprivation of an office of this kind does not affect the liberty or property of the official. It is, therefore, ordered that judgment be entered on the verdict for the plaintiff, and that the defendant, Fred W. Egan, be ousted from office of Burgess of the Borough of East Pittsburgh." The Supreme Court adopted his opinion in its entirety and without any discussion. We feel that upon the main facts of this case, that decision is binding on us.

And now, Dec. 18, 1922, rule to show cause why writ of *quo warranto* should not be quashed is discharged, and the defendant is directed to answer or demur *sec. leg.* From Henry D. Maxwell, Easton, Pa.