# Everhart *versus* Searle.

1. Flagg employed Searle to sell land, the compensation to be all above $125 per acre. Everhart agreed in writing with Searle to pay him $500 "for services in assisting to negotiate a purchase" of the land. Searle brought Everhart and Flagg together, and a contract was made for sale of the land at $150 per acre. Everhart and Flagg afterwards consummated the sale themselves. *Held*, that Searle acting for both without their consent, could not recover the $500 from Everhart.

2. Searle alleged that the understanding was that the $500 was to give Everhart the preference. *Held*, that this was selling his discretion, was bad faith to Flagg, and being so no contract would arise out of the transaction.

3. The fact that Flagg suffered no loss, did not vary the effect, the transaction being against public policy.

4. Mode of answering points stated in this case.

March 15th 1872.    Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ..    AGNEW, J., at Nisi Prius.

Error to the Court of Common Pleas of *Luzerne county* : No. 313, to January Term 1872.

This was an action of assumpsit, commenced May 25th 1870, by James Searle against John T. Everhart.

On the trial, January 9th 1872, before Harding, P. J., the plaintiff gave in evidence the following paper :—

"Pittston, Pa., January 15th 1870:

"I hereby agree to give James Searle, of Pittston, Pennsylvania, in compensation for services rendered in procuring the sale of certain real estate in said Pittston, Luzerne county, all he can obtain for the said real estate, over and above $125 per acre. The said real estate is known as the Elizabeth Drake property, on the Lackawanna river, near John Marcy's 'old forge.' This to continue for one year.                                    A. S. FLAGG.
                                                    Wilbraham, Mass."

He then testified : "After I made contract with Flagg I then said to Mr. Everhart that I was prepared to sell this property known as the Elizabeth Drake property ; could sell Mr. Flagg's interest in that property.    The result of our conversation in reference to the sale was the contract with Everhart," viz. :

"$500.                    "Pittston, Pa., January 17th 1870.

"I hereby agree to pay James Searle five hundred dollars ; two hundred and fifty on the delivery of the deed, the balance, two hundred and fifty, by note, due in ninety days thereafter, for his services in assisting to negotiate a sale and purchase by me of fourteen of eighteen shares, or all, if he can obtain them conveniently, of the eighteen of a certain piece or parcel of land, situate in Lackawanna township, on Lackawanna river, near the old forge, known as the Elizabeth Drake property.    The fourteen shares now being owned by Captain A. S. Flagg, of Wilbraham, Massachusetts.                                    JOHN T. EVERHART.

[Everhart v. Searle.]

" The offer Everhart made was $150 per acre for the property, and the condition of this agreement was to pay me the $500 additional if I would sell him the property at $150 per acre, instead of selling to other parties. I had offers from other parties." * * * After receiving the offer and taking this contract with Everhart I saw Mr. Flagg. We decided to sell the property to Mr. Everhart at his offer. I thereupon saw Mr. Everhart and brought him to my house where Mr. Flagg was waiting the result of my efforts to sell the property. We came down to Wilkesbarre and consummated the sale; Flagg, Everhart and myself came down to Wilkesbarre on 18th January 1870. We went to office of Mr. V. L. Maxwell, and there the papers were executed for sale; papers signed that day or about that time. The price was to be $150 per acre. The contract was executed and the deed prepared for Mr. Flagg to take home with him. * * * Flagg came to Pittston from my letter to him; no arrangement before date of agreement; Everhart proposed to buy the land, and said it was worth $500 more to him than to any one else; did not consider myself agent for Everhart till paper of 17th January 1870; Flagg told me that he wished me to keep oversight of the property, find a purchaser and write to him from time to time. * * * This $500 additional was offered to induce me to let him have the property instead of letting the other parties, who were negotiating for it, have it. I did not consider myself the agent of Everhart, but of Flagg."

The land was conveyed to Everhart by Flagg, February 10th 1870.

For defendant Flagg testified : * * * " I had authorized James Searle to sell that land if he could get $125 per acre or more; I would have taken that sum, of which fact Searle was informed; he did not sell it, however, because I found out that he was Everhart's agent to purchase, or to help purchase it of me, and Everhart learning at the same time that he had become my agent to sell, we both refused to have anything more to do with him." * * *

On cross-examination witness testified: * * * "After giving that authority to Searle I was staying by invitation at his house, and was in his parlor when Mr. Searle came up and informed me that Mr. Everhart was below in his store; I asked him to bring Mr. Everhart up as I wanted to see him; he did bring him up, and we had conversation together on the subject of the purchase and sale of my lands, but we did not meet for the purpose of arranging, it was rather accidental; that was the way and the only time we were ever together in Pittston relative to that sale."

The defendant's 1st point was :—

" The plaintiff having, by his own showing, proved himself the agent for the sale of the land at the time he made the contract to

[Everhart *v.* Searle.]

act as agent for the purchase upon which he now sues, has thereby declared himself guilty of constructive fraud."

He submitted four other points.

The court read all the points to the jury and affirmed them, and said further :—

" With reference to the 1st point, however, we say to you that assuming the fact to be as stated in the point, we affirm it; but this it is not our province to do. The facts of the case are for you, and should your finding of the particular fact stated in the point correspond with that statement, then the point is well put, and would be affirmed. * * *

" Having, in the outset of our charge, answered the points submitted to us by the defendant's counsel, and having further briefly called your attention to the testimony, we say to you, in conclusion, that the whole matter at last is involved simply in questions of fact, which are exclusively for your disposition.

[" You are to find whether the plaintiff was the agent of Mr. Everhart for the purchase of the land, or whether his contract with him was merely that he would give him the preference over other purchasers. James Searle, the plaintiff, had control of the sale of the lands, and he had the right to prefer one purchaser over another. * * * If, therefore, you find that the contract between these parties was predicated of the basis that the plaintiff should give Mr. Everhart the preference over other purchasers, and that Mr. Everhart was to pay him therefor the sum of $500, then we say to you, that such contract was founded upon a good consideration; and further, that the plaintiff had a perfect right to enter into it and to insist upon its fulfilment." * * *]

The verdict was for the plaintiff for $553.50.

The defendant took a writ of error, and assigned for error :—

The qualification of his 1st point; the part of the charge in brackets, and that the court took " up the defendant's written points, and as to each one—except the first—simply reading it over and saying ' this is affirmed,' and then laying them aside and delivering a general charge to the jury, disregarding the principles therein mentioned."

*A. Ricketts* (with whom was *V. L. Maxwell*), for plaintiff in error.—The law does not permit the agent for the sale of a tract of land to become at the same time agent for the purchase of the same : Story's Agency, § 211; Ex parte Bennett, 10 Ves. 381; Gregory *v.* Gregory, Cooper 201; Crowe *v.* Ballard, 3 Bro. C. C. 117; s. c. 2 Cox's C. C. 253; 1 Lead. Cas. in Eq., notes to Fox *v.* Mackreth, 196, 214, 3d Am. ed. ; Davoue *v.* Fanning, 2 Johns. Ch. 352; Copeland *v.* Merc. Ins. Co., 6 Pick. 198; Lazarus *v.* Bryson, 3 Binney 54; Moody *v.* Vandyke, 4 Id. 31; Rankin *v.* Porter, 7 Watts 387; Bartholomew *v.* Leech, Id. 472; Noel *v.*

[Everhart v. Searle.]

White, 1 Wright 514.  The seller himself cannot become agent for the purchaser: Massey v. Davies, 2 Ves. Jr. 317; Benson v. Heathorn, 1 You. & Coll. C. C. 326; Gillett v. Peppercorne, 3 Beav. 78; Paley on Agency 33, 37.  One employed to sell cannot contract with a purchaser for his own private advantage: East India Co. v. Henchman, 1 Ves. Jr. 287, and n. 2; Massey v. Davies, 2 Id. 317, and notes a and 1, 2, Sumner's ed.; Paley on Agency 38 and notes; Story's Eq., § 1261.  The rule is enforced without regard to the intentions, good or bad, in the particular case, simply upon principles of public policy: Ex parte Bennett, 10 Vesey 381, 385.

A. T. McClintock (with whom was C. S. Stark), for defendant in error, cited Gould v. Lee, 5 P. F. Smith 99; Barnhart v. Riddle, 5 Casey 96; Aldridge v. Eshleman, 10 Wright 420, as to explaining a writing.

The opinion of the court was delivered, May 13th 1872, by

THOMPSON, C. J.—The case before us is rather novel.  It involves a question whether the same person may be an agent in a private transaction for both parties, without the consent of both, so as to entitle him to compensation from both or either.  We have the authority of Holy Writ for saying that "no man can serve two masters; for either he will hate the one and love the other, or else he will hold to the one and despise the other."  All human experience sanctions the undoubted truth and purity of this philosophy, and it is received as a cardinal principle in every system of enlightened jurisprudence.

The plaintiff below was appointed by one A. S. Flagg, of Massachusetts, agent to sell certain real estate, situate in Luzerne county, Pennsylvania, and was to receive for his compensation all that he might realize over $125 per acre.  Two days after the date of this authority, to wit, on the 17th January 1870, he accepted from the plaintiff in error the contract in writing upon which this suit was brought, promising to pay him $500 as therein set forth, " for his services in assisting him to negotiate a sale and purchase, by him of fourteen of eighteen shares, or all, if he can obtain them conveniently, of the eighteen (shares) of a certain piece or parcel of land situate in Lackawanna township," &c., composed of the same land he was appointed to sell.  We need not spend time to argue, what is not susceptible of controversy, that by the terms of the instrument he accepted employment as agent to purchase the same land which he was employed as agent to sell.  It is true, the learned judge below, no doubt strongly impressed by the maxim "that the laborer is worthy of his hire," endeavored to make a distinction in the transaction between an undertaking as an agent, and the sale of a preference to the de-

[Everhart *v.* Searle.]

fendant as a buyer. I ought to say, however, that this was hardly his interpretation of the writing, but rather the plaintiff's explanation of his duty under the contract. But the plaintiff, as a witness on the stand, had no right to construe the language of the written contract on which he had brought his suit. There was nothing left out, and no ambiguity in it, and therefore not within the rule of oral explanation. The interpretation was for the court on the terms of the instrument, and they obviously stipulated for the plaintiff's services to assist the defendant in negotiating for the shares mentioned, " or all, if he can obtain them conveniently." He was thus to be acting with the defendant, or by himself, for the defendant, just as the object in view might demand. This was an agency "*pure and simple.*" I do not think, however, that the result as to the plaintiff's claim ought to be at all different from what it is likely to be, on the ground assumed by the learned court; for even on that ground the agent bargained away what his first employer had engaged, viz., his discretion. This was bad faith towards him, and *ex maleficio non oritur contractus.*

There was plausibility and seeming force in the argument that as Flagg, the plaintiff's principal in the sale, was not injured by the arrangement with the defendant, there was nothing wrong in making that arrangement. This is specious, but not sound. The transaction is to be regarded as against the policy of the law, and not binding upon a party who has a right to object to it. "It matters not," it is said, p. 210, of Hare and Wallace's Notes, 1 Lead. Cases in Eq., "that there was no fraud meditated and no injury done; the rule is not intended to be remedial of actual wrong, but preventive of the possibility of it." This was said of " any one who acts representatively, or whose office is to advise or operate, not for himself but for others. The principle is general, that a trustee, so far as the trust extends, can never be a purchaser of the property embraced under the trusts without the assent of all the persons interested; and this principle applies to executors, administrators, guardians, attorneys at law, general and special agents, * * * and to all persons, judicial or private, ministerial or counselling, who in any respect have a concern in the sale of the property of others; it extends to sales by public auction, and to judicial sales as well as to private :" Id. 209 ; and for this innumerable authorities, English and American, are cited. To the same effect is Campbell *v.* The Pennsylvania Life Insurance Co., 2 Whart. 55; Paley on Agency 32. "It is a fundamental rule applicable to both sales and purchases, that an agent employed to sell cannot make himself the purchaser ; nor if employed to purchase can be himself the seller. The expediency and justice of this rule are too obvious to require explanation. For with whatever fairness he may deal between himself and his employer, yet he is no longer that which his services require and his principal

supposes and retains him to be." It is clear from all the authorities, not only those referred to, but those cited in the notes to Fox v. Mackreth and Pott v. The Same, 1 Lead. Cases in Eq. 172, not here specially referred to, as also in numerous cases in our reports from Lazarus and Others v. Bryson, 3 Binn. 54, that an agent to sell cannot become an agent to buy. It is against the policy of the law that such a principle should hold: Ex parte Bennett, 10· Vesey 381. "The ground on which the disqualification rests," it was said in 8 Tomlin's Brown 72, "is no other than that principle which dictates that a person cannot be both judge and party. No man can serve two masters. He that is intrusted with the interests of others cannot be allowed to make the business an object of interest to himself, because, from a frailty of nature, one who has the power will be too readily seized with the inclination to use the opportunity for serving his own interest at the expense of those for whom he is intrusted. The danger of temptation from the facility and advantage for doing wrong which a particular situation affords, does, out of the mere necessity, work a disqualification."

We regard the case of the plaintiff below within the principles of these citations, although it doubtless appeared to him as it did to his able counsel and the learned court, that there was nothing of actual or meditated fraud in the transaction; but the learned judge, we think, erred in refusing the defendant's 1st point, and in charging as set forth in the several assignments of error.

We have no cognisance of the manner in which a judge may have answered points. That must be governed by his own taste and sense of justice. We think, however, that the points should be distinctly read and answered seriatim, and explained, if need be, to an understanding of them by the jury, and then distinctly affirmed, negatived or answered, so that the jury may know that that which has been asserted is or is not the law. From the repeated complaints we have on this subject, we think that care is not always observed in this particular. We have never heard it before in regard to the able and careful judges of the Luzerne district, and we do not know now whether or not the complaint has not arisen out of the over anxiety of counsel, rather than in any want of attention on the part of the court.

From the principles announced, it will be apparent that our opinion is against the right of the plaintiff below to recover from the defendant on the contract sued upon, and therefore we will reverse without awarding a venire de novo. If there be reasons shown hereafter sufficient to authorize a venire, it can be awarded.

　　　　　　　　　　　　　　　　　　Judgment reversed.