## Pile *v.* Thompson, Appellant.

*Attorney-at-law—Counsel fees—Illegal contract—Foreclosure of mortgage.*

An attorney-at-law who has received instructions from a building association to foreclose a mortgage, cannot enter into a valid contract in writing with the mortgagee by which the latter agrees to pay him in consideration of postponing the foreclosure proceedings until a date named, the sum of one hundred and fifty dollars in lieu of attorney's commissions of two hundred and fifty dollars under the mortgage.

Argued Dec. 13, 1915.   Appeal, No. 290, Oct. T., 1914, by defendant, from judgment of Municipal Court, Phila-

400, (1916).]  Statement of Facts—Arguments.

delphia Co., May T., 1914, No. 100, on verdict for plaintiff in case of Frederick M. Pile v. Charles L. Thompson. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.  Reversed.

Assumpsit on a written agreement.  Before BONNIWELL, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $154.50.  Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*David R. Griffith, Jr.,* for appellant.—An attorney cannot make a profit out of his office to the prejudice of the right and interest of his client: Lockhart v. McKinley, 9 W. N. C. 11; Baker v. Humphrey, 9 W. N. C. 13; O'Donnell v. Breck, 7 Pa. Superior Ct. 24; Elliott v. Tyler, 3 Sadler 584; Wilson v. Wilson, 26 Pa. 394; Persch v. Quiggle, 57 Pa. 247; Reeside v. Reeside, 6 Philadelphia 507; Norris' App., 71 Pa. 106; Coursin's App., 79 Pa. 220.

The attorney's commissions provided for in a mortgage in suit are the property of the mortgagee and not of the attorney, and if after scire facias issued the mortgagee satisfy the mortgage the attorney has no right to proceed to collect his commissions: Faulkner v. Wilson, 3 W. N. C. 339; Bronson v. Brown, 8 D. R. 365; Penna. R. R. Co. v. Flanigan, 112 Pa. 558; Wilkinson v. McCullough, 196 Pa. 205.

*Fredk. F. Windle,* with him *Evan B. Lewis,* for appellee.—There was good and sufficient consideration for the contract between the parties hereto: Harlan v. Harlan, 20 Pa. 303; Stebbins v. Crawford County, 92 Pa. 289.

OPINION BY ORLADY, P. J., March 1, 1916:

We dispose of this case on the facts as presented by the appellee. He was the attorney of a building and loan association which held two mortgages against the appellant, and on both of these there was a default for dues in arrears. At a January meeting of the directors, the attorney "was authorized to at once foreclose the mortgages unless C. L. Thompson, (the appellant), would sign an agreement empowering the solicitor to collect all the rents on the property during the life of the mortgages, and out of the rents to pay all dues and interest to the association, and the taxes to the date on which they are or hereafter as they become due." This direction was renewed at the next meeting, and on March 31, in response to a letter from the attorney the appellant appeared at the latter's office, when, as he testified the following conversation was had, "He came to see me, and begged off. He said he was making an arrangement for another loan, and he would pay these mortgages off on or before April 16th. I explained to him, that this was grist to my mill, that came to me, and I couldn't very well afford to let him wait all that time without some remuneration. He said he was perfectly willing to pay me anything reasonable. I suggested $150, and it was absolutely and perfectly agreeable to him when I mentioned it. He didn't object or protest one iota. There was no coercion in any way, shape or form, language or any other way." On April 2, 1914, the defendant delivered to the plaintiff his written agreement as follows: "I agree to pay F. M. Pile the sum of one hundred dollars, in lieu of his fee of $250, if he does not foreclose on the mortgage as above stated until after the sixteenth of April, 1914." Suit was brought on this writing to recover what the attorney alleged to be due to himself personally. The appellant's testimony varies but slightly from the above. He stated, "He said, they have authorized me to foreclose. I am employed by them. I will tell you this, I don't work

for nothing, I am entitled to $250 for this; if you give me $150, I will see that it comes out all right.   So out of fear of foreclosure, I signed my name."   No proceedings were instituted on the mortgages and on April 22, following, the plaintiff negotiated another loan, and paid to the association all that was claimed by it.

The defense was, that the writing was illegal, without consideration and nonenforceable, and on the trial the jury was instructed as follows: "The way for you to determine this question is to view the matter as you would your own business transactions, and determine whether, with a foreclosure proceeding menacing you, you would deem it a reasonable proposition to pay a part of the solicitor's fees, rather than be sued and have your property foreclosed with the burden of additional costs. If you believe that to be a reasonable proposition, then you ought to find a verdict for the amount of the claim," and referred to the matter as a plain business transaction.

We feel the question involved is more serious than indicated by the court.

The defendant did not owe the plaintiff anything.   The fees and professional charges due the solicitor were owing solely by the association, whose counsel he was, and who had a right to know everything in relation to remuneration for services rendered in its behalf.   The directions it gave were not followed in any particular, and the grist to his mill should be brought by his own client and toll should not be exacted from his adversary. The consideration for this writing was independent of any service he was expected to render, and the agreement to pursue a different plan than that directed by his client was hostile to its interests, and resulted in exacting from one of its own members, more than was legally due from him.   It might have cost the appellant more money to have had the mortgages foreclosed, and his financial standing might have been affected, but, these were matters that the association's attorney could not traffic in,

as they were independent of his employment.   The whole debt was paid off within two weeks—much earlier than it could have been recovered by legal process, and all the services of the attorney rendered in securing the payment of that debt are presumed to have been paid for from that fund.   He was not entitled to double compensation, and could not represent adverse interests.

After being retained by the association he could not, without a plain violation of professional duty, attempt to represent any party, or interest opposed to those of his client, or receive any compensation therefor.   The rule has been frequently declared, that an attorney representing one party to a suit will not be allowed to receive compensation from the other party: 3 A. & E. Encl. of Law, 295-6; 4 Cyc. 982.   Our own authorities are uniform on this subject.   In Holt v. Green, 73 Pa. 198, it was held that—The principle of public policy is, that no court will lend its aid to a party who grounds his action upon an immoral or an illegal act, or its support to a claim founded on its own violations: Johnson v. Hulings, 103 Pa. 498.   It matters not that there was no fraud meditated, and no injury done, the rule is not intended to be remedial of actual wrong, but preventive of the possibility of it: Everhart v. Searle, 71 Pa. 256. In all dealings with a client the highest degree of fairness and good faith are required of an attorney, that 'no trust shall be violated, no confidence abused,' is the stern order of the law: O'Donnell v. Breck, 7 Pa. Superior Ct. 24; Ham v. Smith, 87 Pa. 63.   If a different system were allowed, it would be but a short step until attorneys would feel justified in electing, whether it would be more remunerative for them to claim the ordinary compensation allowed by law from the clients, who had regularly employed them, or to negotiate with the adversary for a greater reward—thus violating one of the earliest canons of duty.   "He must not exhibit a sordid avidity of gain, by putting a price upon his service to each litigant party.   He oweth to his client fidel-

ity, secrecy, diligence and skill, and cannot take a reward from the other side, nor can he enforce a contract based on assistance to an opposite party." Weeks on Attorneys, 255, 548.

Under the admitted facts, the jury should have been instructed to return a verdict for the defendant.

The judgment is reversed.