## Peoples Trust Company v. Davis et al.

*Equity—Bill to distribute reward among claimants.*

1. The Peoples Trust Company, having been robbed by seven bandits, engaged a detective agency to hunt them down. The agency advertised a reward of. $5000 for the arrest and conviction of all the bandits and a proportionate amount for each, which offer was known to the trust company. At about the same time the company itself advertised a reward of a similar amount for information leading to the arrest and conviction of the men and a proportionate amount for each. Six of the seven bandits were arrested, tried and convicted. The rewards being claimed by many, a bill in equity was filed by the trust company to secure proper distribution among the various claimants. There being doubt as to whether one or two rewards of $5000 were payable, a stipulation was filed by counsel for all parties, agreeing that the reward should be considered as $7500, and six-sevenths of that amount should be distributed by the court to such parties as were equitably entitled thereto, as a reward both for arrest and conviction and for information leading thereto: *Held,* (*a*) that those making the arrests being officers of the law, acting in line of their regular employment, without risk beyond that which as officers they were bound to take, and dependent almost wholly on information furnished by other claimants, the proportion of the reward distributed to them should be one-third, to be divided in proportion to the number of arrests made by each; and (*b*) that two-thirds should go to those giving the information, to be divided in proportion to the value of the information furnished and the services rendered.

*Equity—Claimant acting in bad faith—Exclusion from reward.*

2. A claimant who gave valuable information, but who subsequently received from one of the bandits and disbursed large sums of money in an endeavor to secure the acquittal of two of them in a manner which, if successful, would probably have led to the acquittal of the others, is not entitled to share in the reward on the ground of public policy.

Bill for distribution of rewards. C. P. Berks Co., Equity Docket, 1923, No. 1318.

*John B. Stevens* and *H. F. Brossman,* for plaintiff.

*W. B. Bechtel, Ira G. Kutz, H. P. Keiser, Wellington M. Bertolet, John W. Speicher, Wilson S. Rothermel, David F. Mauger, David Sharman, William E. Sharman, Joseph R. Dickinson, Leonard G. Yoder* and *Lloyd Schaeffer,* for claimants.

BIDDLE, P. J., 9th judicial district, specially presiding.—This bill was filed by the Peoples Trust Company of Wyomissing for the purpose of securing, among the various claimants thereto, the distribution of the reward or rewards offered by the trust company for the arrest and conviction, and for information leading to the arrest and conviction, of the bandits who robbed the trust company in February, 1921.

### Findings of fact.

1. On Feb. 4, 1921, the Peoples Trust Company of Wyomissing, the plaintiff in this proceeding, was robbed by a band of seven bandits, who secured a large amount of cash and securities.

2. The directors of the trust company employed the William J. Burns International Detective Agency, Incorporated, to ascertain, locate and arrest the bandits who were engaged in the robbery of the trust company. Subsequent to this employment, and in pursuance thereof, the Burns Detective Agency advertised a reward offered by the trust company for the arrest and conviction of the said bandits. The offer was the sum of $5000 for the arrest and conviction of all of the bandits, and of a proportionate amount for the arrest and conviction of any of them. This offer was known to the officers of the Peoples Trust Company and was never objected to by the trust company.

3. At about the same time the officers of the trust company caused a notice to be published in the newspapers in, and in the vicinity of, Reading of a reward of $5000 for information leading to the arrest and conviction of the bandits who were engaged in the robbery, and of a proportionate amount thereof for information leading to the arrest and conviction of any of the said bandits. Subsequent to the publication of these offers of reward, six of the seven bandits, namely, Minogue, Scott, Russo, Bernstein, Wallace and Stark, were arrested, charged with complicity in the robbery of the Peoples Trust Company, and all of them were subsequently tried and convicted.

4. Minogue, the first of the bandits to be apprehended, was arrested by Officer James Smith without a warrant. Bernstein, another of the bandits, was arrested by Sergeant George E. McCartney without a warrant.

5. The whereabouts of Wallace and Stark was ascertained from Bernstein by Lieutenant James J. Gegan; and Bernstein subsequently gave similar information to Harry H. Stroble.

6. Wallace and Stark were arrested without a warrant on March 17, 1921, by Cornelius J. Browne, George E. McCartney and George P. Gilbert, who were acting under instructions from Lieutenant Gegan. The information obtained by Harry H. Stroble from Bernstein played no part in the arrest of Wallace and Stark.

7. Russo and Scott were arrested by Edward McFeely, Thomas Garrick, Joseph Cornelli, John Beatty, Alexander McClaughrey and Charles Coppelman.

8. Information which led or assisted in leading to the arrest of all six bandits, except Minogue, came from a number of sources; and this information was so interlaced and correlated that it cannot be said that the information furnished by any one of the defendants in the bill was, standing alone, sufficient to bring about the arrest and conviction of any one of the robbers. In a number of instances information relative to one of the robbers was directly or indirectly instrumental in leading to the arrest and conviction of one of the others not mentioned in that information.

9. The following claimants gave information that led to the arrest and conviction of the six robbers who were tried and convicted, the value and extent of the information being in the order in which their names appear, namely, Helen Davis, George Kemp, Joseph R. Thornburg, Adam B. Huntzinger, John J. Knauer, Jacob Scharneck and Mamie A. McDonald.

10. The information furnished by Harry H. Stroble, H. M. Brownell, J. Franklin Bingaman and Meta Lilienthal played no effective part in securing the arrest and conviction of any of the robbers.

11. John J. Morey furnished information that was of considerable value in the investigations that led to the arrest and conviction of the robbers. He was active in inducing the commission of crime by some of the robbers, not that he might share in the proceeds of their crime, but that he might profit by his part in their subsequent detection. In the present instance he acted with grossly bad faith towards the Peoples Trust Company of Wyomissing by doing all in his power to secure the acquittal of the robbers, after their arrest, and by secretly disbursing for the benefit of the robbers large sums of money that, in all probability, formed a part of that stolen from the trust company, some of the money so disbursed being for the express purpose of "fixing the jury."

12. On the filing of the present bill, the plaintiff admitted its liability for the payment of six-sevenths of the $5000 reward offered, and asked that defendants interplead for this amount. After the evidence in the case had

been taken, it was suggested, upon the argument of the case, that the plaintiff was liable for two rewards instead of only one; the first for the arrest and conviction of the robbers, the second for information leading to the arrest and conviction of the robbers. After this point was suggested, the following stipulation was entered into by all the parties in suit, through their counsel, on April 30, 1923:

### "Stipulation of counsel.

"And now, April 30, 1923, the testimony in the case and the contentions of several of the parties raising the question as to whether the reward in this case was one for 'arrest and conviction, &c.,' or for 'information leading to the arrest and conviction, &c.,' and the plaintiff having offered, in order to have the matter disposed of, to increase the amount before the court by a sum equal to fifty per cent. thereof, it is agreed by and between all parties interested therein that the court shall distribute said fund, as so increased, to such parties as it shall determine are equitably entitled thereto, and in such proportions as though the reward offered was a single reward of said amount offered, both for the arrest and conviction and for information leading to the arrest and conviction, upon the evidence and record now before the court, and that the rule for leave to amend plaintiff's bill be discharged."

### Conclusions of law.

1. The total amount of the rewards offered, as finally fixed by the stipulation of April 30, 1923, should be divided among the defendants whose information led to the arrest and conviction of the six robbers, as well as among the defendants who participated in the actual arrest of the robbers who were convicted.

2. In making the distribution in the case of those furnishing information that led to the arrest and conviction of the robbers, the amounts awarded should be in proportion to the value of the information furnished and services rendered by the defendants to whom the awards are made.

3. In the case of the distribution among those who made the actual arrest, the distribution should be on the basis of the number of defendants actually arrested. Of the total amount for distribution, two-thirds of the aggregate, or $4285.71, should be distributed among those who furnished information which led to the arrest and conviction of the robbers; and one-third of the total, or $2142.86, should be distributed among those who made the actual arrest of the robbers who were subsequently convicted.

4. John J. Morey is not entitled to any part of the rewards offered. H. M. Brownell, J. Franklin Bingaman, Harry H. Stroble and Meta Lilienthal are not entitled to any part of the rewards offered.

5. The $2142.86 allotted for distribution to those who made the actual arrests of the robbers should be distributed as follows: To James Smith, individually, $357.14; to Thomas Garrick, Edward McFeely, Joseph Cornelli, John Beatty, Alexander McClaughrey and Charles Coppelman, jointly, $714.29; to Cornelius J. Browne, George McCartney, James J. Gegan and George P. Gilbert, jointly, $1071.43.

6. The $4285.71 allotted for distribution to those who furnished information that led to the arrest and conviction of the robbers should be distributed as follows: To Helen Davis, $1335; George Kemp, $1250.71; Joseph R. Thornburg, $550; Adam B. Huntzinger, $500; John J. Knauer, $450; Jacob Scharneck, $125; Mamie A. McDonald, $75.

7. Each of the parties to this action should pay his own printing costs, witness fees and costs of subpoenaing his witnesses. The docket costs should be paid by the plaintiff.

## Discussion.

The findings of fact in this case, while they involved much study and examination of the testimony, require, we think, but little discussion. As to most of them, the facts are not in dispute. As to the relative value of the information furnished by the various claimants, there may be room for wide difference of opinion; but, in the opinion of the court, the testimony in this case justifies the finding of the relative value placed on that information by the court.

The amount for final distribution here is in excess of the amount plaintiff originally intended to pay, as we have no doubt that it never intended to obligate itself to a total in excess of $5000 for the arrest and conviction and for information leading to the arrest and conviction of all of the bandits. In view of the fact, however, that the offer was worded in different ways, and in ways that might be held to make it liable for two rewards of $5000 each, it would have been necessary to dismiss the bill, except for the stipulation entered into by the parties in suit on April 30, 1923: Bridesburg Manufacturing Co.'s Appeal, 106 Pa. 275.

In the allotment of the various amounts for the actual arrest and for information that led to the arrest, we were controlled largely by the fact that those making the arrests were in each instance officers of the law, who were acting in the line of their regular employment and not incurring any risk beyond that which, as officers, they were bound to take; and the arrests that they actually made were, so far as the outcome was concerned, dependent almost wholly on the information that was furnished by the claimants resident in Pennsylvania. We think, therefore, that the division of the total in the proportion of two to one is equitable and just. After the allotment was made, the division was based entirely on the number of arrests made, the various claimants receiving the proportion of their allotment that was in direct ratio to the number of arrests made by them.

As, among the other claimants, we think that the two who were most largely instrumental in furnishing information and doing work that led to the ultimate conviction of six of the robbers were Helen Davis and George Kemp, and it is in view of this that we have awarded to them an amount larger than that received by any of the others.

In the case of John J. Knauer, a larger amount would have been awarded to him had he acted more promptly than he did. According to his statement, he was suspicious of the two robbers that he drove to Philadelphia, even before they entered his automobile in the City of Reading; and if he had acted in Reading, or on his way to Philadelphia, or while he was in Philadelphia, on those suspicions and had given the information that he waited to make until his return to Reading, his information would have had much greater value. In view of this, we think we would not be justified in awarding him more than we do.

While the information given by Jacob Scharneck was of decided value, he did not furnish it of his own motion in the first instance, but only acted subsequently to investigation and interrogation of him by Officer Kemp; and we have, therefore, awarded a considerable portion of what would otherwise have gone to Scharneck to Officer Kemp.

The same reasoning applies to Mrs. McDonald, who, when she acted, was entirely governed and controlled by the orders and instructions of Officer

Peoples Trust Company *v.* Davis et al.

Kemp. We might, on this ground, have been justified in refusing her any award whatever, but we have determined that the small amount awarded her is perhaps more equitable than refusing it altogether.

In the case of Harry H. Stroble, while we have no doubt that Bernstein made to him the statements that Officer Stroble testified were made, yet we also believe that Bernstein had previously given the same information to Lieutenant Gegan, and that the information acquired by Officer Stroble, therefore, added nothing in value to what was already had by the New York officer who made the arrest. On this account, we made no award whatever to Mr. Stroble.

There is no evidence that, in our opinion, would justify us in awarding to Meta Lilienthal and J. Franklin Bingaman any of the reward.

While H. M. Brownell reported to the officers what he had heard in regard to Scharneck, it appears from his own testimony that nothing was done as a result of his information, and he failed himself to follow it up. We think, therefore, that nothing should be awarded to him.

If John J. Morey had acted in good faith with the Peoples Trust Company of Wyomissing, we should feel that he was entitled to receive a substantial part of the reward offered; but in the light of his own testimony, even apart from the very damaging evidence given by Minogue or Belmont with regard to him, we think it would be against public policy to make to him any award whatever.

The purpose of the reward offered was not merely to secure the arrest, but to secure the conviction of the robbers. According to Mr. Morey's statement, he received from Russo and disbursed a very substantial sum of money in the endeavor to secure the acquittal at least of Russo and Scott, and that in a manner which, if successful, in all probability would have led to the acquittal of the other defendants. While Mr. Morey stated that he was positive that none of this money came as a result of the robbery of the Peoples Trust Company of Wyomissing, he gave no satisfactory basis for this belief, and the evidence which he himself produced was such as would induce most persons to believe that it came directly from that robbery.

The Burns Detective Agency had caused to be published a statement that, in addition to the $5000 reward for the arrest and conviction of the criminals, there was a reward of $20,000 for the recovery of the stolen property, and Morey is a claimant for at least a portion of the money offered for the recovery of the stolen property. In the very able brief of his learned counsel the following argument appears:

"There was a well-organized effort, however, to discredit Mr. Morey by attempting to show that he was in collusion with the bandits before and at and after the time of the Wyomissing robbery, for the purpose of disentitling him to any part of the reward. As a matter of fact, although it does not appear in the evidence, this effort was staged for the purpose, not so much of denying him the privilege of participating in the distribution of this reward as to discredit him in his claim for the larger reward for the recovery and return of the stolen securities, for the recovery of which he has since instituted action."

We think that this statement, in connection with the testimony of Morey himself, appears to explain the conduct of Morey and his action in regard to his expenditure of the money for the benefit of Russo and Scott. The conclusion we have reached is that it was his desire to so ingratiate himself with the criminals that he might learn from them where the balance of the securities was placed, and that, by subsequently securing the stolen property, he

might entitle himself to the larger reward that was offered for that, and that, in endeavoring thus to promote his own financial interest, he was perfectly willing to victimize the trust company and the Burns Detective Agency by expending the money placed in his hands by Russo without care or regard as to the source from which that money came. It seems to the court that it would be difficult to conceive a clearer case of a man who was attempting to serve two masters for the sole purpose of advancing, not the interest of either master, but the interest of himself, and where he was acting in as complete bad faith as it was possible for him to act towards each of these masters; and we believe that to allow payment of any part of the reward to Morey under those conditions would be flatly against the policy of the law: Everhart v. Searle, 71 Pa. 256; Wilkinson v. McCullough, 196 Pa. 205.

The principle, we think, is so well established that it does not require a citation of further authorities. The general principles governing the distribution of the reward among those claimants who furnished information only and who aided in the conviction is fully discussed in the opinion of Judge Endlich in the case of Oldfield v. City of Reading, 1 Berks Co. L. J. 141. In the conclusions there set out we fully concur, and believing, as we do, that they control the distribution here, we think that our determination along that particular line needs no further discussion or justification.

From Wellington M. Bertolet, Reading, Pa.