### Downing's Estate

*Thomas Raeburn White*, with him *W. Wilson White* and *White & Williams*, for exceptant.

*Raymond M. Remick* and *Saul, Ewing, Remick & Saul*, for accountant.

KLEIN, J., February 14, 1947.—The Real Estate Title Insurance and Trust Company granted a loan of $70,000 to Anna R. Dlugatch on May 21, 1920, payable within one year, and took as collateral security an assignment of a purchase-money mortgage in the sum of $125,000, secured upon real estate located at Eighth and Arch Streets, in the City of Philadelphia. This loan was carried, either by renewal or as an overdue obligation, until October 30, 1924, when the Pennsylvania Company for Insurances on Lives and Granting Annuities, the accountant, which owned more than a majority of the shares of the capital stock of the Real Estate Title Insurance and Trust Company, purchased the note. The mortgage was then transferred to the parent company as collateral, by formal assignment duly recorded in the recorder of deeds' office.

On February 2, 1925, the Pennsylvania Company transferred the mortgage to its trust department. At the settlement the loan of $70,000 was repaid to the commercial department of the bank, and the balance of $55,000 was paid to the mortgagee. The Pennsylvania Company thereupon assigned the mortgage to

itself as "trustee for sundry trusts". The day following the settlement, on February 3, 1925, the Pennsylvania Company executed a declaration of trust, indicating that a $6,500 interest in the aforesaid mortgage was held for the benefit of this estate. The mortgagor met all of his obligations under the mortgage until 1932, when a default occurred resulting in a foreclosure of the property in 1935. The interest held by this estate in this mortgage was finally disposed of by the accountant at a net loss of $5,602.18.

The learned auditing judge, in a carefully considered adjudication, denied the beneficiaries' request that the trustee replace the investment with cash, and decided that the personal interest of the trustee in the mortgage was not of such a substantial nature that it affected its judgment in purchasing this investment.

After a careful study of this problem, we have concluded that we cannot agree with out learned colleague. In our opinion, the trustee was the owner of this mortgage within the purview of the rule forbidding self-dealing by trustees and therefore under a duty to replace it with cash on the demand of the beneficiaries.

The rule prohibiting trustees from purchasing their individual property has been clearly and unequivocally stated by the Supreme Court in Tracy et al. v. Central Trust Co., 327 Pa. 77 (1937), in which Justice Schaffer, speaking for an unanimous court, said (p. 79):

*"It has long been an outstanding principle of the law of trusts that a trustee violates his duty to the trust estate if he sells to himself as trustee property which he individually owns.* This principle has been crystallized in the Restatement, Trusts, Sec. 170, comment h, (p. 435) thus: 'The trustee violates his duty to the beneficiary if he sells to himself as trustee his individual property.' We have always held to this principle: Painter v. Henderson, 7 Pa. 48; Everhart v. Searle, 71 Pa. 256. *That the trustee acted in good faith*

*makes no difference*: Restatement, Trusts, Sec. 170, comment h." (Italics supplied.)

To the same effect see Lewis Estate, 349 Pa. 455, 459 (1944).

Transactions in which fiduciaries deal with themselves are contrary to the policy of the law and not binding upon a party who has the right to object to them. The Supreme Court said in Everhart v. Searle, 71 Pa. 256, 260 (1872):

" 'It matters not . . . that there was no fraud meditated and no injury done; the rule is not intended to be remedial of actual wrong, but preventive of the possibility of it.' "

The court said, further, at p. 261:

" 'The danger of temptation from the facility and advantage for doing wrong which a particular situation affords, does, out of the mere necessity, work a disqualification.' "

Learned counsel for the accountant maintains that since this mortgage was pledged with the trustee as security for a loan, it was not at any time its owner and that therefore this transaction does not constitute a purchase from its commercial department. We cannot accept this contention.

It is true that in a pledge the general property remains with the pledgor and only special property passes to the pledgee: Merion T. & T. Co. Mtg. Trust Fund Case, 344 Pa. 262 (1942); Schwab v. Continental-Equitable T. & T. Co., 330 Pa. 540, 542 (1938); Union Trust Co. v. Long, 309 Pa. 470, 477 (1932). However, the assignment of the security to the creditor to hold as collateral security for his debt establishes a privity of contract which invests him with the ownership of the collateral for all purposes of dominion over the debt assigned: Hanna v. Holton, 78 Pa. 334 (1873). Although the mortgagee was technically the owner of the mortgage in question, her interest was subordinated

to the primary interest of the Pennsylvania Company so long as her debt remained unpaid. The mortgage was recorded in the name of the Pennsylvania Company and it was the owner for all practical intents and purposes until its loan was repaid.

The rule against self-dealing by a trustee is an inflexible one. Once it is established that the trustee purchased an asset which he owned individually or jointly with others, beneficiaries of the trust have the right to set aside the purchase and compel the trustee to repay the amount of the purchase price with interest thereon. In such case the trustee will be entitled to receive from the trust estate the property and any income thereon actually received by the trust estate: Tracy et al. v. Central Trust Co., 327 Pa. 77, citing A. L. I. Restatement of Trusts 560, §206, comment c.

The rule against self-dealing by a trustee is not limited to situations in which the trustee sells to himself as trustee his individual property. It also applies to cases in which he sells to himself as trustee "property in which he has a personal interest of such a substantial nature that it might affect his judgment": A. L. I. Restatement of Trusts, §170, comment h. Instances could be cited in which the trustee, although not the owner of the property which is sold to the trust estate, nevertheless receives a direct financial benefit from the transaction. More frequently the trustee may receive incidental benefits such as compensation for performing some service in connection with the investment: e. g., insuring title to real estate, placing fire insurance, selling securities or real estate, collecting rents, etc. In all such situations it becomes a matter for the discretion of the court to determine whether the trustee's interest was substantial enough to affect his judgment in purchasing the investment for the trust estate.

If the trustee's interest in the transaction was of a trifling nature or involved an insignificant sum in relation to the amount of the investment, the court could, in its discretion, conclude that the trustee's judgment was not affected by its interest. But involved transactions, such as the one under scrutiny, in which a large loan is transferred from a subsidiary company to a parent company and the investment securing same is subsequently placed in a trust estate, must be discouraged in order to prevent possible abuse of the fiduciary relationship.

Stripped of all unessential facts, the present case discloses that the commercial department of the Pennsylvania Company held a mortgage, recorded in its name, as collateral security for an overdue debt which it had taken over from a subsidiary company. It purchased this mortgage for its trust department and from the purchase money paid off to itself the amount of its loan in full. There is no suggestion that the accountant acted in bad faith or that it did not honestly believe that the mortgage was a proper one for its trust department when it was made. Regardless of the trustee's good intentions, the net result of this transaction was that the Pennsylvania Company's loan was paid off to it at par, without loss, while the beneficiaries of this estate received less than 20 percent return on their principal in the salvage operation which followed the foreclosure. Had the company not assigned this mortgage to its trust department and retained the investment itself, it would have lost approximately 50 percent of its loan.

If in the present case the fact that the accountant held the mortgage as pledgee and not as absolute owner takes it out of the operation of the mandatory rule laid down in Tracy v. Central Tr. Co., supra, and makes it a matter for the exercise of our discretion to determine whether the company's interest was

substantial enough to affect its judgment in making the transfer, as the auditing judge held, we would, nevertheless, decide that under the circumstances of this case the interest of the trustee was of such a compelling nature that it must be presumed that its judgment was affected thereby. In either event, the policy of the law safeguarding the interests of trust beneficiaries from the possible influence of any self-interest would compel us to direct the trustee to replace this investment with cash.

The record in the present case discloses that the real estate which was taken as the result of the foreclosure of the mortgage in question was sold August 18, 1943, prior to the death of Rebecca Downing Bullock, the life tenant. Apparently no objection to the transaction was made by her in her lifetime and none was made by personal representatives at the audit of the account. We must, therefore, assume that she did not object to the investment, and it is not necessary for us to make any finding with respect to any loss of income which she may have sustained.

On February 7, 1947, subsequent to the argument before the court en banc, a letter was received by the court (which is attached to the record) from John Bishop, 6th, Esq., attorney of record for Marjorie Bullock LeBoutillier, Francke Rumsey Bullock, and Richard H. D. Bullock, three of the four remaindermen. In this letter Mr. Bishop stated that his clients do not wish to press a surcharge claim against the Pennsylvania Company and are willing to waive their rights irrespective of the action of the court.

The sale of this estate's $6,500 participating share of the mortgage resulted in a net principal loss of $5,602.18. John Emlen Bullock, exceptant, is therefore entitled, in addition to his distributive share of the estate as presently constituted, to one fourth of this

sum, or $1,400.54 in cash, and the accountant is directed to make payment accordingly.

The exceptions are sustained and the adjudication, as modified by this opinion, is confirmed absolutely.