422 A.2d 1147

**COMMONWEALTH of Pennsylvania**

v.

**Chris PINHAS, Appellant.**

Superior Court of Pennsylvania.

Submitted April 16, 1980.

Filed Nov. 26, 1980.

Petition for Allowance of Appeal Granted March 13, 1981.

342

David O'Hanesian, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

LIPEZ, Judge:

Appellant was convicted, after a jury trial, of conspiracy [1] and promoting prostitution.[2] Two co–defendants, although named in separate informations, were tried with appellant in

1. 18 Pa.C.S. § 903.

2. 18 Pa.C.S. § 5902(b).

the same proceeding. The co–defendants were convicted of prostitution.[3] All three were represented by the same defense attorney. Appellant claims, on this appeal by new counsel, that his interests in the matter conflicted with those of his co–defendants and that he was, for that reason, deprived of the effective assistance of counsel. We agree.

Appellant, who was the manager of the "Cavalier Health Spa," and the two female employees of that establishment were represented at all relevant stages of this case by Allen Brunwasser, Esquire. Although the manager and one of the women wanted to plead guilty as part of a bargain offered by the Allegheny County prosecutor, the other woman refused. Since the district attorney had offered the deal only on the condition that all three accept it, it was withdrawn. The defendants then pleaded not guilty and the case proceeded to trial.

The record indicates that discussion of the question of conflict of interest was initiated by the trial court, seemingly *sua sponte*, after the delivery of opening statements to the jury.[4] In response to the court's query whether a conflict was extant, Brunwasser said:

> I think frankly, Your Honor, I think there is a conflict here. I have attempted to plea bargain this case, and two of the defendants are agreeable to the plea bargain.

The court then cautioned Brunwasser to avoid any disclosure, in connection with the issue, of "anything of a confidential nature that has gone on heretofore or between you and your clients or you and the prosecution . . . ." After counsel offered to withdraw his representation of the two women, the court attempted to question the defendants concerning their desire to continue the existing arrangement. The court quoted several Pennsylvania appellate opinions, and then said:

**3.** 18 Pa.C.S. § 5902(a).

**4.** The Court had recessed after opening statements had been given the previous day, and discussion of the multiple representation took place the following morning, before the jury were returned to the courtroom.

So I have difficulty with that myself, so I'm sure that the individual persons will have as much or more. I don't know whether that clears the air or makes it any cloudier, but I think of chief concern to the appellate courts of the Commonwealth are situations where in multiple defendant cases one person may have a defense that is inconsistent with that advanced by one of the other or where the single attorney may neglect one person, one or more of the defendants' cases in order to give the remaining clients a more spirited defense.

The colloquy continued:

Now Mr. Pinhas, considering everything I have said so far and reminding you that you have a right to be reticent to imparting information of a certain type here, the Court would inquire of you your feelings with respect to your continued representation by Mr. Brunwasser as your counsel in the trial of this case before the jury presently selected. You wish to continue to have him as your counsel and represent you in the trial of this case?

Mr. Pinhas: Yeah, I'd like him.

The Court: Do you have any feeling of your own that there may be some defense on your part or involved in your case that might be inconsistent with that of any other persons on trial or there may be any possibility that your defense may be neglected in favor of other defendants on the trial?

Mr. Brunwasser: I respectfully object. I don't think Mr. Pinhas is capable of making that decision, and meaning he doesn't understand the conflict, nor do the other defendants, and I respectfully suggest that asking him conclusory questions—

The Court: Perhaps counsel could put the conflicts which he seems to see in the case on the record so they will be there to be judged by whatever body ultimately has to make the decision, whether this court or someone else.

Mr. Brunwasser: My respective position is that until the testimony is put on the record, no one could really be clear about the conflicts, if any. I respectfully suggest that

before the defendants could make an informed decision they would have to hear the entire Commonwealth's case, hear the case subjected to cross–examination, and then be advised by their lawyer.

The Court and Brunwasser then exchanged lengthy and rambling statements (consuming more then twenty pages of transcript) which revealed nothing other than a certain amount of personal enmity between them, arising, apparently, from counsel's contumacious conduct during legal proceedings in other matters before this judge and others in Allegheny County.[5]  The Court denied counsel's motions for a continuance, withdrawal, and declaration of mistrial on the grounds that counsel's ability, as perceived by the court, to discuss the issue of conflict of interest at what the court considered great length was proof that counsel had been aware of it at a much earlier date and had deliberately avoided bringing it to the court's attention.  The court declared that such motions might properly be denied if made solely to force a delay.

During the trial, the defendant who had declined the plea bargain testified that appellant was the manager of the enterprise, and that he had been responsible for collecting fees from patrons (paid ostensibly in exchange for a massage) and for paying her wages and those of the other employees.  She also stated that, although appellant had told her not to engage in sexual relations with customers, "hand relief" (manual stimulation of patrons' genitalia) was not uncommon and was performed if requested.

If, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such a

5.  The discussion began with counsel's insistence that his clients would be unable to make an informed decision until they heard all of the Commonwealth's evidence, and his concomitant motion for mistrial (denied by the court).  Counsel also insisted, briefly, that he would refuse to conduct an active defense, and merely sit silently at the defense table.  This stemmed from his purported fear that he would be "insulted or ridiculed" by the court, and that the local newspapers would publish any such judicial calumny.  Counsel abandoned that course of action when the court suggested that he would be held in contempt if it were attempted.

conflict vitiates the proceedings, even though no *actual* harm results. The potentiality that such harm *may* result, rather than that such harm *did* result, furnishes the appropriate criterion. . . . [T]he Superior Court in *Pile v. Thompson*, 62 Pa.Super. 400, well stated: " * *  The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it."

*Commonwealth ex rel. Whitling v. Russell*, 406 Pa. 45, 48, 176 A.2d 641, 643 (1962) (Emphasis in original). The basis for such an analysis is the opinion of the Supreme Court of the United States in *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In *Glasser*, the Court reversed the conviction of a defendant whose trial counsel had simultaneously, by appointment of the trial court, represented a co–defendant in the same trial. The Court found it

clear that the "assistance of counsel" guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled by a court–order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired.

To preserve the protection of the Bill of Rights for hard–pressed defendants, we indulge every reasonable presumption against the waiver of fundamental rights. [Citations omitted.]

.     .     .     .     .

To determine the precise degree of prejudice sustained . . . is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.

*Id.* at 70–76, 62 S.Ct. at 464–468. The court held that multiple representation in the face of an actual or potential conflict was constitutionally ineffective.

The instant case raises the issue of what must be shown on the record in order to allow a court to find a conflict of interests. This question was answered by the United States Supreme Court in *Holloway v. Arkansas*, 435 U.S. 475, 98

S.Ct. 1173, 55 L.Ed.2d 426 (1978). In that case, the Court held that a trial court's failure, in the face of representations to it by counsel (who, as an officer of the court, made such representations virtually as one under oath) to the effect that a conflict of interest existed, "to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel[,]" *id.* at 484, 98 S.Ct. at 1178, had deprived the petitioner therein "of the guarantee of 'assistance of counsel.'" *Id.*, The *Holloway* Court found support for this proposition in *Glasser* :

Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. Speaking of the obligation of the trial court to preserve the right to jury trial for an accused Mr. Justice Sutherland said that such duty "is not to be discharged as a matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof and with a caution increasing in degree as the offenses dealt with increase in gravity." *Patton v. United States*, 281 U.S. 276, 312, 313, [50 S.Ct. 253, 263, 74 L.Ed. 854] (1930). The trial court should protect the right of an accused to have the assistance of counsel. "This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

*Glasser v. United States*, supra 315 U.S. at 71, 62 S.Ct. at 465, quoted in part at 435 U.S. at 484–85, 98 S.Ct. at 1179. See Am.Bar Ass'n *Standards, supra,* The Function of the Trial Judge § 3.4(b).[6] The Court in *Holloway* held, there-

---

**6.** Section 3.4(b) provides:

fore, that defense counsel's mere "conclusory representations" of the existence of a conflict would require a court to pursue such a matter further. The Court noted with approval, that, since *Glasser,*

> most courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted. [Citations omitted.] In so holding, the courts have acknowledged and given effect to several interrelated considerations. An "attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interests exists or will probably develop in the course of a trial." [Citation omitted.] *Second, defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem.* [Citation and footnote omitted]. Finally, attorneys are officers of the court; and " 'when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.' " *State v. Brazile,* [226 La. 254, 266, 75 So.2d 856, 860–61 (1954)].[9]

> [9] When a considered representation regarding a conflict in clients' interests comes from an officer of the court, it should be given the weight commensurate with the grave penalties risked for misrepresentation.

*Id.* at 485–86, 98 S.Ct. at 1179 (emphasis added).

The Court recognized and resolved the obvious objections to such a holding:

> The State argues, however, that to credit [defense counsel]'s representations to the trial court would be tantamount to transferring to defense counsel the authority of the trial judge to rule on the existence or risk of a conflict and to appoint separate counsel. In the State's view, the ultimate decision on those matters must remain with the trial judge; otherwise unscrupulous defense attorneys

> > Whenever two or more defendants who have been jointly charged or whose cases have been consolidated are represented by the same attorney, the trial judge should inquire into potential conflicts which may jeopardize the right of each defendant to the fidelity of his counsel.

might abuse their "authority" presumably for purposes of delay or obstruction of the orderly conduct of the trial.[10]

---

[10] Such risks are undoubtedly present; they are inherent in the adversary system. But courts have abundant power to deal with attorneys who misrepresent facts.

The State has an obvious interest in avoiding such abuses. But our holding does not undermine that interest. When an untimely motion for separate counsel is made for dilatory purposes, our holding does not impair the trial court's ability to deal with counsel who resort to such tactics. *Cf. United States v. Dardi*, 330 F.2d 316 (2d Cir.) *cert. denied*, 379 U.S. 845 [85 S.Ct. 50, 13 L.Ed.2d 50] (1964); *People v. Kroeger*, 61 Cal.2d 236 [37 Cal.Rptr. 593] 390 P.2d 369 (1964). Nor does our holding preclude a trial court from exploring the adequacy of the basis of defense counsel's representations regarding a conflict of interests without improperly requiring disclosure of the confidential communications of the court.[11] *See State v. Davis*, [110 Ariz. 29, 514 P.2d 1025 (1973)]. In this case the trial court simply failed to take adequate steps in response to the repeated motions, objections, and representations made to it, and no prospect of dilatory practices was present to justify that failure.

---

[11] This case does not require an inquiry into the extent of a court's power to compel an attorney to disclose confidential communications that he concludes would be damaging to his client. *Cf. A.B.A. Code of Professional Responsibility*, D.R. 4--101(c)(2) (1969). Such compelled disclosure creates significant risks of unfair prejudice, especially when the disclosure is to a judge who may be called upon later to impose sentences on the attorney's clients.

*Id.* at 486–87, 98 S.Ct. at 1179–1180.

In the case before us, although counsel's statement that the first conflict of interest of which he was aware arose during an attempt to obtain a plea bargain indicates that he knew or should have known at that time that multiple representation would be impossible, if not unethical,[7] there is

7. *See* American Bar Association, *Standards relating to the Administration of Criminal Justice, The Defense Function,* § 3.5(b) (1974):
   Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same

no evidence of record that would allow a conclusion that counsel's failure to take action at that earlier time was intentionally for the purpose of causing delay, and not merely negligent. In either case, appellant was deprived of constitutionally effective counsel.[8] Therefore, since the trial court, upon being told by defense counsel that counsel believed that the litigation interests of his several clients were in conflict, took none of the "adequate steps" suggested in *Holloway*, but instead required improper joint representation, *Glasser* requires automatic reversal. 435 U.S. at 488, 98 S.Ct. at 1180–1181. The above-quoted colloquy, which was the only attempt by the trial court to ascertain appellant's position regarding the issue, is insufficient to constitute a waiver of appellant's right to counsel, since the only statement made by appellant during it was that he wished to continue Brunwasser's representation. There is no indication that appellant understood what a "conflict of interest" was; that one existed in his case; or his rights with regard thereto. Section 3.5 of the *A.B.A. Standards, The Defense Function*,[9] indicates further, by expression *in the conjunctive* of the three independent requirements that 1) *no conflict is likely*; 2) the defendants give their *informed consent* to multiple representation in such circumstances; *and* 3) such consent be a matter of *judicial record*, that multiple representation wherein co–defendants' inter-

criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co–defendants except in unusual situations when, after careful investigation, it is clear that (i) no conflict is likely to develop; (ii) the several defendants give an informed consent to such multiple representation; and (iii) the consent of the defendants is made a matter of judicial record. *In some instances, accepting or continuing employment by more than one defendant in the same criminal case is unprofessional conduct.*
(Emphasis added.)

**8.** If counsel's actions were, in fact, intentional, the trial court, as indicated by the Supreme Court, may investigate and exact appropriate sanctions against him, *see Code of Professional Responsibility*, E.C. 5–14, 5–15, 5–17; D.R. 5–105; however, appellant cannot be deprived of a fair trial because of the behavior of his attorney.

**9.** See note 7 *supra*.

ests are in conflict is not waivable.[10] We, therefore, cannot conclude that appellant waived any challenge to the multiple representation.

Although we do not require that the trial record be examined in order to find a conflict, we note that the testimony of the only defense witness who took the witness stand indicates one. Appellant had pleaded not guilty; this constituted a denial of the charges against him. Brunwasser, as counsel for appellant and the female employees, could not, therefore, effectively cross–examine one of the women (in order to protect appellant's interests) when she testified that appellant was the massage parlor's manager; that he was responsible for collection of fees and disbursement of wages; and that "hand relief" was regularly provided patrons upon their request.

The trial court also bears a significant portion of the responsibility for protecting a defendant's constitutional right to effective counsel. The language employed by the *Glasser* court in resolving the issue of multiple representation aptly describes the deficiency of the court's questioning of appellant concerning his representation by Brunwasser in the case before us:

> No such concern on the part of the trial court for the basic rights of Glasser is disclosed by the record before us. The possibility of the inconsistent interests of Glasser and Kretske was brought home to the court, but instead of jealously guarding Glasser's rights, the court may fairly be said to be responsible for creating a situation which resulted in the impairment of those rights.... Under these circumstances to hold that Glasser freely ... acquiesced in the appointment of Stewart is to do violence to reality and to condone a dangerous laxity on the part of the trial court in the discharge of its duty to preserve the fundamental rights of an accused.

315 U.S. at 71–72, 62 S.Ct. at 465. *See* Am. Bar Ass'n, *Standards, supra, The Function of the Trial Judge* § 3.4(b).[11]

10. *Id.*

11. See note 6 *supra.*

In the instant case, the circumstances surrounding the attempted plea bargain and the defense witness's testimony [12] are indicative of conflicts which could well have rendered Brunwasser's representation of all three defendants impossible and, perhaps, unethical. Since it appears, from counsel's statements regarding the plea bargain, that as in *Holloway*, defense counsel may have been faced with the risk of violating his duty of confidentiality to his clients by disclosure of additional details, and since the trial court's response to counsel's assertion of the existence of a conflict was inadequate, [13] we reverse the judgment of sentence and remand the cause for new trial. [14]

12. We specifically do not hold, in this opinion, that it is necessary for the case to proceed to a point where a conflict actually appears on the record. We use this testimony solely as an example of the sort of conflict to which defense counsel may refer in a prior conclusory assertion to the court that a conflict exists. The *Holloway* Court spoke of such examples in a strictly hypothetical sense:

> Joint representation of conflicting interests is suspect because of what it *tends* to prevent the attorney from doing. For example, in this case it *may* well have precluded defense counsel ... from *exploring possible plea negotiations* and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable. Generally speaking, a conflict *may* also prevent an *attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another*, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied. The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters.

435 U.S. at 489–90, 98 S.Ct. at 1181–1182 (emphasis added).

13. The Dissenting Opinion of Powell, J., joined by Blackmun and Rehnquist, JJ., in *Holloway v. Arkansas*, 435 U.S. 475, 491, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (Powell, J., dissenting) is instructive in summarizing the holding of the case. Mr. Justice Powell's opinion indicates clearly that failure of the trial court, when informed by defense counsel of a possible conflict, to hold an "appropriate hearing on defense counsel's motions for separate representation" requires, on constitutional grounds, reversal of the petitioner's convictions. *See* id. at 491–493, 98 S.Ct. at 1182–1183.

WICKERSHAM, J., files a dissenting statement.

WICKERSHAM, Judge, dissenting:

I would affirm the conviction and judgment of sentence on the opinion of the Honorable James F. Clarke.

Defense counsel was employed to represent all three defendants some six months before the date of trial and represented all three at their preliminary hearing. Defense counsel did not raise the alleged issue of a conflict of interest until after the jury was sworn. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (Decided May 12, 1980). State trial courts are required to investigate *timely* objections to multiple representation. Defense counsel had an ethical obligation to advise the court promptly when a conflict of interest arose. As the Court said in *Cuyler,*

> *Holloway* reaffirmed that multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest. See 435 U.S., at 482, 98 S.Ct. 1173, 55 L.Ed.2d. 426. Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. But unless the trial court fails to afford such an opportunity, a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel. Such a presumption would preclude multiple representation even in cases where " '[a] common defense . . . gives strength against a common attack.' " Id., at 482–483, 98 S.Ct. [1173,] at 1178, 55 L.Ed.2d 426, quoting *Glasser v. United States,* 315 U.S.

14. We can well understand the trial judge's sense of frustration when he found it necessary, at the time of trial, to raise the question of conflict of interest *sua sponte* when counsel, prior to trial had been aware of the conflict, which awareness imposed a duty on him "to advise the court *at once* of the problem." *Holloway,* supra. Nevertheless, counsel's dereliction cannot be imputed to appellant.

354

60, 92, 62 S.Ct. [457,] at 475, 86 L.Ed. 680 (1942) (Frankfurter, J., dissenting).

*Id.* at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346.

Judge Clarke gave the defendant an opportunity to demonstrate a conflict and found none. Nor do I.